**AMERICAN PACIFIC CONCRETE PIPE COMPANY, INC.,** Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondents.**

No. 85–7015.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 8, 1985.

April 25, 1986.

Robert W. Richardson, Carlos Bea, A Law Corp., San Francisco, Cal., for petitioner.

Patrick J. Szyman, Aileen A. Armstrong, N.L.R.B., Washington, D.C., for respondents.

Before WALLACE, HUG, and HALL, Circuit Judges.

HUG, Circuit Judge:

This case concerns the accounting principles to be used in determining "net worth" for purposes of deciding whether the $5 million net worth ceiling precludes recovery of fees under the applicable provisions of the Equal Access to Justice Act, ("EAJA"), 5 U.S.C. § 504, 28 U.S.C. § 2412 (1982). There is also a preliminary issue of whether this case is moot because of the reenactment of the EAJA with an increased ceiling. We hold that the case is not moot and proceed to the merits.

American Pacific Concrete Pipe Company ("AMPAC") petitions for review of a Supplemental Order of the National Labor Relations Board ("NLRB") denying its application for attorneys' fees under the EAJA. The NLRB denied AMPAC's request because AMPAC's net worth exceeded the $5 million ceiling established by the EAJA, 28 U.S.C. § 2412(d)(2)(B). In calculating AMPAC's net worth, the NLRB deviated from generally accepted accounting principles by eliminating any deduction for accumulated depreciation. We reverse.

## I.

On February 23, 1984, AMPAC applied to the NLRB for an Order of Fees and Expenses of Litigation pursuant to the EAJA, 5 U.S.C. § 504, 28 U.S.C. § 2412, and NLRB Rules and Regulations, 29 C.F.R. Part 102. The application was made on the ground that the NLRB was not substantially justified in issuing a complaint that was subsequently withdrawn prior to hearing. AMPAC's EAJA application included a financial statement, prepared in accordance with general accounting principles, that showed AMPAC's net worth to be within the statutory ceiling of $5 million.

On consideration of AMPAC's EAJA application, the administrative law judge determined, and the NLRB agreed, that net worth, within the meaning of the EAJA, does not include an allowance for depreciation in the valuation of fixed assets. Therefore, according to the administrative law judge and the NLRB, AMPAC did not meet the "less than $5 million" net worth requirement of the EAJA.

## II.

An initial inquiry is whether the extension and amendment of the EAJA on August 5, 1985 in Public Law No. 99–80, 99 Stat. 183 ("1985 Act") renders this case moot. The 1985 Act raised the ceiling for eligibility from $5 million to $7 million. AMPAC would be eligible under the $7 million ceiling even under the NLRB's calculations. We must, therefore, determine the applicability of the new ceiling to the facts of this case.

The original EAJA was enacted on October 1, 1981, and terminated on October 1, 1984. The 1985 Act extended the EAJA from October 1, 1984, even though it was actually enacted August 5, 1985. Section 7(a) of the 1985 Act provides in relevant part that "the amendments made by this Act shall apply to cases pending on or commenced on or after the date of the enactment of this Act." [1] 99 Stat. at 186. The adversary proceeding in this case commenced September 23, 1983, when the original EAJA was in effect, and was concluded on the merits on January 31, 1984. A timely application for fees was made within thirty days thereafter. Thus, the underlying adversary proceeding on the merits was not pending, but the application for attorneys' fees was still pending on the date of the enactment of the 1985 Act. Hence, the question before us is whether the term "cases pending" refers only to the underlying adversary proceeding or also includes the application for fees.

In *Tongol v. Donovan,* 762 F.2d 727 (9th Cir.1985), we interpreted the applicability of the original EAJA to pending cases. The pertinent statutory provision stated that the EAJA applied to any civil action or adversary adjudication " 'pending on, or commenced on or after' October 1, 1981." Pub.L. No. 96–481, § 208, 94 Stat. 2321, 2330 (1980); *see Tongol,* 762 F.2d at 730, *citing* 5 U.S.C. § 504 note (1982). We held that a case was no longer pending for purposes of the EAJA when the sole issue remaining was the liability of the State of California for attorneys' fees. We cited with approval a decision of the District of Columbia Circuit in which the court held that a case was not pending for purposes

---

**1.** Section 7(b) of the 1985 Act provides that cases which were commenced during the gap in coverage between October 1, 1984 and the date of enactment of the 1985 Act, August 5, 1985, and were finally disposed of prior to the date of enactment, will be covered as if the 1985 Act were in effect. The 30-day time period for filing an application for fees is to commence running from the date of enactment. 99 Stat. at 186.

of the EAJA when the only remaining issue on the effective date was the collateral issue of the federal government's liability for attorneys' fees. *Id.* at 731 (citing *Nichols v. Pierce*, 740 F.2d 1249, 1256 (D.C.Cir. 1984)). We stressed that our holding was mandated by the strict construction required for waivers of sovereign immunity, *Tongol*, 762 F.2d at 732. In this case, we are interpreting a section of the 1985 Act that expands the federal government's liability for attorneys' fees. The same policy reasons we announced in *Tongol* apply in this case.

The 1985 statute involves an effective date provision with slightly different wording from the 1980 Act; it also has significant legislative history that interprets the effective date provision. The House Report accompanying H.R. 2378, which eventually became the 1985 Act, states:

> As enacted in 1980, the Act applies to actions "pending on, or commenced on or after October 1, 1981." ... The changes which are made by H.R. 2378 which merely clarify existing law are retroactive, and apply to matters which were pending on, or commenced on or after October 1, 1981. However, changes which are made by H.R. 2378 and which expand or otherwise change existing law shall take effect on the date of enactment and shall apply to matters pending on or commenced after that date.

H.R.Rep. No. 120 (pt. 1), 99th Cong., 1st Sess. 10–11, *reprinted in* 1985 U.S.Code Cong. & Ad.News 132, 139.

Another significant piece of legislative history occurred in the debate on the floor of the House. Representative Kastenmeier, the co-sponsor of the 1985 Act, author of the House Report, and leader of the House debate prior to House passage of the amendments, stated:

> I would like to clarify the effective date provisions of H.R. 2378 [the 1985 Act] and the relationship of these provisions with the original act. Cases which were pending on October 1, 1984, including fee application proceedings would be governed by the original act, provided that the time to file the fee application expired before the date of enactment of this bill.

131 Cong.Rec. H4762 (daily ed. June 24, 1985). The bill passed by the Senate was identical to H.R. 2378 and was voted on without Senate committee consideration (*see* 131 Cong.Rec. S9991–98 July 24, 1985). Thus, there is no Senate committee report on the bill.

The Fifth Circuit has considered a similar case where only the fee application, and not the underlying action, was pending on the date of the 1985 Act. The issue there was an interpretation of the phrase "position of the government." The 1985 Act further defined the meaning of that phrase and the House Report made clear that this was a clarification of existing law. The Fifth Circuit held that the interpretation of the "position of the government" was a clarifying amendment that was applicable to the fee application that was pending. *Russell v. National Mediation Board*, 775 F.2d 1284, 1286–87 (5th Cir.1985). The opinion noted and distinguished our opinion in *Tongol. Russell*, 775 F.2d at 1287–88.

The case before us differs from the *Russell* case in that it involves an expansion of eligibility to new claimants by virtue of a higher net worth ceiling. We are, therefore, faced with the question of whether the expanded eligibility applies to this fee application that was pending on the date of enactment, when the merits of the dispute had already been resolved. The rationale of our opinion in *Tongol* would require that the original debt ceiling apply if the merits of the case were not pending on the date of enactment, absent any contrary legislative history.

Representative Kastenmeier's statement on the floor in explaining the effective date provides a slight variation on that interpretation. His statement was that "[c]ases which were pending on October 1, 1984, including fee application proceedings would be governed by the original act, provided that the time to file the fee application expired before the date of the enactment of this bill." Thus, conceivably under this

interpretation, there could be a case in which the merits were pending on October 1, 1984, but were resolved on July 15, 1985, and where the 30-day time period for the fee application would not expire until after the August 5, 1985 effective date of the 1985 Act. Under Representative Kastenmeier's interpretation, the 1985 Act would apply. The justification for that interpretation is difficult to find in the language of the statute, however; and, even assuming that it applies, it would not change the result in this case. The final disposition on the merits occurred on January 31, 1984, and the 30-day time period for filing the fee application under 5 U.S.C. § 504(a)(2) expired long before the effective date of the 1985 Act.

■ Thus, we hold that, under our rationale in *Tongol* and also under Representative Kastenmeier's interpretation of the effective date provision on the floor of the House of Representatives, the provision of the 1985 Act that raises the ceiling for eligibility does not apply to this case. Hence, the case is not moot, and we will decide the merits under the provisions for the $5 million ceiling contained in the original EAJA.

### III.

■ Ordinarily, the standard to be applied to a denial of attorneys' fees under the EAJA is the abuse of discretion standard. *Timms v. United States*, 742 F.2d 489, 492 (9th Cir.1984). Further, an agency's interpretation of a statute it administers is normally afforded considerable deference, see *Hawaiian Electric Co. v. United States Environmental Protection Agency*, 723 F.2d 1440, 1447 (9th Cir.1984). However, in this case, the NLRB is not interpreting a statute within its area of special expertise; thus, its interpretation is not entitled to the deference we normally employ. We will, therefore, review the NLRB's interpretation of the EAJA in the same manner in which we review a district court's interpretation of a statute, that is, as a question of law subject to *de novo*

review on appeal. *See Foster v. Tourtellotte*, 704 F.2d 1109, 1111 (9th Cir.1983).

The NLRB held that in determining net worth for purposes of eligibility under the EAJA, assets should be valued at their original cost, without deducting accumulated depreciation. To be entitled to attorneys' fees under the EAJA, a firm must have a net worth no greater than $5 million and have no more than 500 employees. 28 U.S.C. § 2412(d)(2)(B), *Unification Church v. INS*, 762 F.2d 1077, 1085 (D.C.Cir.1985). The NLRB concedes that AMPAC has no more than 500 employees, but not that it has a net worth of no more than $5 million. The financial statement, which reflected accumulated depreciation in the usual manner, showed that AMPAC's net worth was well below $5 million; however, with all depreciation eliminated, AMPAC's net worth was well above $5 million. The NLRB now argues that depreciation should not be considered in computing the company's net worth.

Although "net worth" is not defined in the legislation, the accompanying Committee Reports state that net worth is "calculated by subtracting total liabilities from total assets." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 15 (1980); S.Rep. No. 96–253, 96th Cong., 1st Sess. 17 (1979). The NLRB argues that additional language in the legislative history redefines how depreciable assets are to be valued in an EAJA context. The following language constitutes the NLRB's entire support for its position: "In determining the value of assets, the cost of acquisition rather than fair market value should be used." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 15 (1980). Thus, the NLRB argues, Congress intended that net worth for EAJA eligibility purposes would be calculated by subtracting total liabilities from total assets, with assets valued solely at their cost of acquisition. The NLRB contends that in determining net worth under the EAJA, neither loss nor gain in the market value of assets is properly considered; since depreciation represents a loss in market value, amounts taken as depreciation should be eliminated from an appraisal of net worth.

Only the Seventh Circuit has addressed this issue. In *Continental Web Press, Inc. v. NLRB*, 767 F.2d 321 (7th Cir.1985), the Seventh Circuit rejected the same arguments advanced by the NLRB in this case. The court stated in its well-reasoned opinion:

> All this means to us is that the net worth figure must be derived from the company's books rather than from an appraisal. There is no indication that Congress meant by "the cost of acquisition" the undepreciated cost of acquisition. As the Board acknowledges, subtracting accumulated depreciation from the cost of acquisition "is a generally accepted accounting practice." No reason is given why Congress might have wanted to reject it.
>
> Congress did not define the statutory term "net worth." It seems a fair guess that if it had thought about the question, it would have wanted the courts to refer to generally accepted accounting principles. What other guideline could there be? Congress would not have wanted us to create a whole new set of accounting principles just for use in cases under the Equal Access to Justice Act.... Although many cases say that waivers of sovereign immunity are to be narrowly construed, a closer case than this one is necessary to put the precept into play.

*Id.* at 323.

■ We agree with the Seventh Circuit. It is unreasonable to conclude from this brief sketch of legislative history that Congress could have intended that generally accepted accounting principles would not apply.

■ The financial statement of AMPAC, prepared in accordance with generally accepted accounting principles, shows a net worth that is less than the $5 million ceiling. Thus, AMPAC is not disqualified from the EAJA award on the basis of net worth and its application must be considered on the merits. The decision of the NLRB is reversed and the case is remanded for further proceedings to determine entitlement to an award of attorneys' fees under the EAJA.

REVERSED and REMANDED.