*149 Affirmed by published opinion. Judge RUSSELL wrote the majority opinion, in which Judge WTDENER joined. Judge HALL wrote a dissenting opinion.
OPINION
DONALD S. RUSSELL, Circuit Judge:
The Secretary of Labor (the “Secretary”) appeals an award of attorneys’ fees and expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), arising out of an action brought by the Secretary against Walter W. King Heating and Plumbing Contractor, Inc. (“King Plumbing”), its employees’ benefits plans, and the plans’ trustees. We affirm the award of attorneys’ fees and expenses.
I.
In 1976, King Plumbing established a profit-sharing plan and a pension plan (collectively, the “Plan”) for its employees.* Walter W. King and Evelyn King were the trustees of the Plan, and King Plumbing was the Plan’s sponsor.
Beginning in 1983, Walter King, who has substantial knowledge and experience in the real estate market in western Maryland, began investing the Plan’s assets in residential real estate mortgages, primarily in Frederick County. King reviewed each application for a mortgage loan, met with each borrower personally, and visited each property. He based the interest rate for the mortgage loans on the prevailing rates from local banks. Almost all of the mortgages were short term (five-year balloon) residential mortgages, amortized over 25 years. Most of the mortgages were for less than $100,000, and did not exceed 80% of the value of the property. Between 1985 and 1993, the Plan made approximately 83 mortgage loans, most of them for residential property in Frederick, Maryland.
During the period between June 30, 1984, through June 30, 1993, the Plan averaged better than a ten percent return, grew from $1,513,334 to $4,762,178, paid out benefits in excess of $1.5 million, and never had a return less than 8.67% in any single year. Of the loans made from the Plan’s assets, only two defaulted but the Plan recouped the entire amount of principal, interest, and costs in foreclosure proceedings.
Because of the high percentage of assets invested in real estate mortgages, the Secretary began investigating King Plumbing in October 1990. The Secretary concluded that King Plumbing failed to diversify appropriately the assets of its Plan, in violation of § 404(a)(1)(C) of the Employee Retirement Income Security Act of 1974 (“ERISA”), 29 U.S.C. § 1104(a)(1)(C). It also concluded that King Plumbing had engaged in transactions prohibited by § 406(a)(1)(D) and § 406(b)(1) of ERISA, 29 U.S.C. §§ 1106(a)(1)(D) & (b)(1), by using the Plan’s assets to make mortgage loans to individuals who used the loan proceeds to purchase land owned by King Plumbing and to pay King Plumbing to build homes on the land.
On July 29, 1992, the Secretary filed suit against King Plumbing, Walter and Evelyn King, and the Plan itself (collectively, “King Plumbing” or “the defendants”). The Secretary’s complaint alleged both that the defendants had engaged in forty-seven prohibited transactions and that the investment of the Plan’s assets failed to meet the diversification requirements of ERISA.
On December 7, 1993, the defendants deposed James Carroll, the government agent who had investigated King Plumbing. According to Carroll’s testimony, he concluded that the Plan’s mortgages constituted prohibited transactions because Evelyn King told him that the Plan had made mortgages to individuals who used the proceeds to purchase land owned by King Plumbing and to pay King Plumbing to build homes on the land. Carroll, however, knew that Mrs. King did not have personal knowledge of the nature of the mortgages. Furthermore, he made no review of the mortgage loans and land records to verify that King Plumbing owned the land prior to their being subject to the Plan’s mortgages.
*150 In February 1994, the parties settled the prohibited transaction claims. Although King Plumbing did not admit that it had engaged in any prohibited transactions, it agreed not to make loans from the Plan to be used for the purchase of property or services from King Plumbing. In return, the Secretary dismissed the forty-seven prohibited transaction claims against King Plumbing.
On the remaining claim for non-diversification, the district court denied cross-motions for summary judgment, and it held a bench trial on September 26, 1994. Richard Hinz, the Chief Economist and Director in the Office of Research and Economic Analysis for the Pension and Welfare Benefits Administration of the Department of Labor, testified as an expert witness for the Secretary. Hinz concluded that the Plan’s lack of diversification was imprudent because the Plan could have achieved the same return with fewer risks by investing in Ginnie and Fannie Mae pooled mortgages. He also testified that the Plan could suffer large losses due to default risk, interest rate risk, inflation risk, and liquidity risk. However, Hinz had not investigated any of the particular loans in the Plan’s portfolio, but based his analysis on general economic and investment theories.
The defendants called three expert witnesses: David E. Brock, the president of the Bank of Brunswick in Brunswick, Maryland; Alfred J. Morrison, a private investment management consultant; and William G. Psil-las, an employee benefit consultant. Brock provided the best testimony for the defendants. He had analyzed each of the loans in the portfolios and in many cases visited the properties themselves. He concluded that the concentration of the Plan’s assets in local residential loans did not create a risk of large losses. He based his opinion on the loans’ low loan-to-value ratios, the fact that the loans were 5-year balloon mortgages, the good payment histories of the borrowers, and Walter King’s knowledge of the local real estate market. Brock also testified that 60% of his bank’s assets are invested in similar mortgage loans in the same geographic area, and that the loans are marketable. Brock also noted that the Plan received an 8.93% return on investments, 0.1% higher than his bank’s return.
The district court entered judgment in favor of the defendants on November 17, 1994. Reich v. King, 867 F.Supp. 341 (D.Md.1994). The district court noted that ERISA required a plan’s fiduciary to diversify the plan’s investment “unless under the circumstances it is clearly prudent not to do so.” 29 U.S.C. § 1104(a)(1)(C). The district court held that the defendants had met their heavy burden of proving that their non-diversification was prudent under the circumstances, and that the defendants had offered “convincing and credible evidence that the Plan does not face the risk of large losses due to nondiversification.” Id. at 344. The district court found Brock’s testimony particularly compelling because, of all the experts, only he had reviewed the particular loans at issue. The court discounted the testimony of Hinz, which it found was based on “textbook type theories that appeared far removed from the actual realities of mortgages in Frederick County.” Id. at 345. The Secretary did not appeal the district court’s decision.
On November 30, 1994, King Plumbing filed a motion for an award of attorneys’ fees and expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A). The district court granted the motion on August 3, 1995, and awarded attorneys’ fees in the amount of $51,648.00 and expenses in the amount of $3,947.15. The Secretary has appealed the award of attorneys’ fees and expenses.
II.
The Equal Access to Justice Act provides:
Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.
28 U.S.C. § 2412(d)(1)(A). The party seeking fees bears the burden of proving that it was the prevailing party. The government, however, bears the burden of showing that *151 its position was substantially justified. Thompson v. Sullivan, 980 F.2d 280, 281 (4th Cir.1992). We review the district court's award of attorneys' fees and expenses under an abuse of discretion standard. Pierce v. Underwood 487 U.S. 552, 557-63, 108 S.Ct. 2541, 2546-49, 101 L.Ed.2d 490 (1988).
A.
We turn first to the district court's decision to award attorneys' fees and expenses on the prohibited transaction claims. In challenging this award, the Secretary argues that King Plumbing was not the prevailing party in the settlement of the prohibited transaction claims, and that the Secretary's position on those claims was substantially justified.
1. Prevailing party
The district court found that King Plumbing was the prevailing party in the settlement of the prohibited transaction claims because it secured the dismissal, with prejudice, of the claims `without conceding that it had committed any prohibited transactions. In return, King Plumbing merely agreed not to engage in any future prohibited transactions. In other words, the Secretary dismissed the forty-seven claims against King Plumbing in exchange for its promise to do what it was already legally required to do: adhere to ERISA. The district court stated that "[ut is difficult to imagine how King Plumbing could have fared any better."
The Secretary claims that it prevailed in the settlement because it gained the right to institute contempt proceedings against King Plumbing if it engaged in prohibited transactions in the future. ERISA, however, has already created a cause of action to remedy prohibited transactions. The power to bring a contempt action merely duplicates the ERISA cause of action and does nothing to improve the Secretary's ability to enforce ERISA. Neither remedy is effective unless the Secretary can prove that King Plumbing actually engaged in prohibited transactions, which the Secretary could not do with respect to any of the forty-seven transactions identified in the complaint.
We conclude that the district court did not abuse its discretion in finding King Plumbing to be the prevailing party in the settlement.
2. Substantial justification
The district court found that the Secretary's position on the prohibited transaction claims was not substantially justified because the Secretary based his charges on a single, unverified statement made by Evelyn King. Evelyn King told a government investigator that King Plumbing had made mortgage loans from the Plan to individuals who then used the proceeds to purchase land owned by King Plumbing and to pay King Plumbing to build homes on the land. Although the investigator knew that Mrs. King did not have personal knowledge of the nature of the mortgages, but merely processed the loan payments and handled the bookkeeping, the investigator made no examination of the mortgage loans. The Secretary agreed to settle the prohibited transaction claims after the investigator revealed during his deposition that Mrs. King's statement constituted the entire basis of the Secretary's claims.
The government insists that Mrs. King's statement is extremely strong evidence of an ERISA violation because she was a trustee of the Plan. We disagree. Although Mrs. King had the title of trustee, the government investigator knew that Mr. King made all of the financial decisions and that Mrs. King performed only ministerial functions. The investigator should have verified Mrs. King's statement by examining the individual mortgage loans. The district court did not abuse its discretion in concluding that the Secretary should have conducted a more thorough investigation before bringing prohibited transaction charges against King Plumbing.
The Secretary also contends that the evidence it gathered during discovery specifically identified two loans as constituting prohibited transactions. Even if the government did find evidence supporting two prohibited transactions, it does not provide a compeffing reason to alter the district court's judgment. The Secretary brought sweeping charges against King Plumbing, alleging that it had engaged in forty-seven prohibited transac- *152 tions. After discovery, the Secretary found no evidence to support the charges with respect to forty-five of the forty-seven transactions. The Secretary did not amend its complaint to limit its prohibited transaction claims to the two mortgage loans on which it found evidence of impropriety. The Secretary admitted that it did not amend its complaint because it was in the middle of settlement negotiations with King Plumbing and it did not want to weaken its bargaining position. Even so, the Secretary entered a settlement agreement in which King Plumbing did not admit to having engaged in any prohibited transaction. Whatever evidence the Secretary found to support its prohibited transaction claims, we conclude that the district court did not abuse its discretion in discounting it.
The Secretary also contends that Walter King admitted at trial that he had engaged in one prohibited transaction. The gist of King’s testimony, however, was that he took money out of the Plan in 1983 to finance a construction job, learned that such an action was prohibited, and did not do it again. The Secretary’s prohibited transaction charges are based on transactions that occurred between 1985 and 1990. Thus, King’s admission bears no relation to the mortgage loans that form the basis of the Secretary’s prohibited transaction claims.
We conclude that the district court did not abuse its discretion in finding that the Secretary’s position on the prohibited transaction claims was not substantially justified.
B.
We next turn to the district court’s decision to award attorneys’ fees and expenses on the lack of diversification claim. Because it is clear that King Plumbing was the prevailing party on this claim, the Secretary argues only that its position was substantially justified.
ERISA requires a plan’s fiduciary to diversify the plan’s investments “unless under the circumstances it is clearly prudent not to do so.” 29 U.S.C. § 1104(a)(1)(C). The district court found that the Secretary adopted the position that the King Plumbing’s lack of diversification was a per se violation of ERISA because of the inherent risks in mortgage loans. The district court held that the Secretary’s position was not substantially justified because he made no inquiry into the specific facts and circumstances surrounding the Plan’s investments.
The Secretary contends that the district court has mischaraeterized its position. He argues that he did not take the position that the failure to diversify real estate investments was a per se violation of ERISA. Instead, he maintains that he considered the specific circumstances surrounding the Plan’s investments and concluded that the concentration of assets in real estate mortgages in a single geographical area exposed the Plan to the risk of large losses. Specifically, the Secretary identified the following risks: the risk that a significant downturn in the local economy could lead to widespread unemployment resulting in borrower defaults and loss of property values (default risk); the risk that a general rise in the interest rate would devalue the investments or that a decline in interest rates would lead to widespread prepayment by borrowers (interest rate risk); the risk that an increase in inflation would devalue the investments and decrease their marketability (inflation risk); and the risk that a sudden, unexpected demand for benefit payments by the beneficiaries would result in losses from the inability to sell the mortgages at face value (liquidity risk).
The Secretary, however, did not identify any specific reasons suggesting the likelihood of a significant downturn in the local economy, a sudden change in interest rates, a drastic increase in inflation, or an unexpected demand for benefit payments by the beneficiaries. The Secretary did not examine any of the particular mortgages in the portfolio to determine the risk of the Plan’s investments. Hinz, the Secretary’s expert, relied on general assumptions to reach the general conclusion that it is always imprudent to concentrate assets in real estate mortgages in a single geographical area. Neither the Secretary nor his expert examined the specific circumstances surrounding the Plan’s investments to determine whether King Plumbing’s lack of diversification was imprudent.
*153 We conclude that the district court did not abuse its discretion in finding that the Secretary’s position on the diversification claim was not substantially justified.
III.
For the foregoing reasons, we affirm the district court’s award of attorneys’ fees and expenses.

AFFIRMED.

In 1990, the King Plumbing Profit Sharing Plan and the King Plumbing Money Purchase Plan were merged into one plan, entitled the King Plumbing Benefit Trust.