Henry Ruffin BROADDUS,
Plaintiff–Appellant,

and

Frances Broaddus Crutchfield,
Plaintiff,

v.

UNITED STATES ARMY CORPS OF ENGINEERS, Defendant–Appellee,

and

County of Hanover, Virginia,
Defendant.

No. 03–2257.

United States Court of Appeals,
Fourth Circuit.

Aug. 13, 2004.

Argued: May 7, 2004.

Decided: Aug. 13, 2004.

**ARGUED:** Benjamin Adelbert Thorp, IV, Ellis, Thorp & Jewett, P.L.L.C., Richmond, Virginia, for Appellant. Michael Thomas Gray, United States Department Of Justice, Washington, D.C., for Appellee. **ON BRIEF:** William B. Ellis, Ellis, Thorp & Jewett, P.L.L.C., Richmond, Virginia, for Appellant. Thomas L. Sansonetti, Assistant Attorney General, Environment & Natural Resources Division, United States Department Of Justice, Washington, D.C.; Paul J. McNulty, United States Attorney, Alexandria, Virginia, M. Hannah Lauck, Assistant United States Attorney, Office Of The United States Attorney, Richmond, Virginia; John A. Bryson, United States Department Of Justice, Washington, D.C., Katherine Will, Army Corps Of Engineers, for Appellee.

Before WIDENER and GREGORY, Circuit Judges, and C. Arlen BEAM, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

Reversed and remanded with instructions by published opinion. Judge GREGORY wrote the opinion, in which Senior Judge BEAM joined. Judge WIDENER wrote a separate concurring opinion.

GREGORY, Circuit Judge:

This appeal arises from the district court's denial of Henry Ruffin Broaddus's ("Broaddus" or "Appellant") petition for attorney's fees, pursuant to the Equal Access to Justice Act ("EAJA" or "Act"), 28 U.S.C. § 2412. Broaddus successfully challenged a condemnation action brought by the United States Army Corps of Engineers (the "Corps" or "Appellee") and Hanover County (together, "Defendants") against land owned by Broaddus and his mother, Frances Broaddus Crutchfield ("Crutchfield") (together, "Plaintiffs"). The statute allows persons who have successfully sued the government to collect attorney's fees, provided they meet certain eligibility requirements, the relevant provision here being that the individual have a net worth of less than $2 million. The district court determined that Broaddus failed to establish financial eligibility under the statute and denied his petition for attorney's fees. Broaddus appeals. For the following reasons, we reverse and remand this matter to the district court for a determination of appropriate attorney's fees.

## I.

On June 14, 2000, Hanover County condemned a portion of Newcastle Farm ("Newcastle"), two-thirds of which Broaddus inherited upon his father's death.[1] The County sought to build, on a portion of Newcastle, "a sewage forcemain and outfall/diffuser for the Totopotomoy wastewater treatment plant." Br. of Appellant at 6. In total, the County condemned "1.1 acres in fee simple, 5.719 acres for a permanent access and utility easement, and 10.66 acres for a temporary construction easement," *id.* at 6, and offered to compensate Broaddus $12,000 for the taking.

On August 8, 2000, Broaddus and Crutchfield filed suit against Defendants, challenging the amount of compensation

---

1. Broaddus's mother inherited an undivided one-third interest in Newcastle.

offered for the condemnation proceeding and challenging the Corps's verification of three Nationwide Permits ("NWPs"), pursuant to Section 404 of the Clean Water Act ("CWA"), 33 U.S.C. § 1344. The NWPs served as the basis for the condemnation proceeding. Broaddus contended that the NWPs violated the CWA, the National Environmental Policy Act, 42 U.S.C. § 4321, *et seq.*, and the National Historic Preservation Act, 16 U.S.C. § 470. The district court set aside the verifications and remanded the matter to the Corps for further proceedings. *See Crutch-field v. U.S. Army Corps of Eng'rs,* 154 F.Supp.2d 878 (E.D.Va.2001). Thereafter, the court enjoined the construction project, pending the Corps's consideration on remand. *See Crutchfield v. U.S. Army Corps of Eng'rs,* 192 F.Supp.2d 444 (E.D.Va.2001). We dismissed Hanover County's appeal as moot on May 31, 2002. *Crutchfield v. County of Hanover, Va.,* No. 01–2488 (4th Cir. May 31, 2002), and issued an order awarding costs to the Plaintiffs, (4th Cir. July 23, 2002).[2]

Accordingly, Broaddus filed an application with the district court for attorney's fees and costs pursuant to EAJA. The Corps opposed his application, maintaining that Broaddus was ineligible to receive fees under EAJA because his net worth exceeded the $2 million statutory cap. On August 6, 2003, the district court entered an order denying Broaddus's application for attorney's fees, holding that he failed to meet his burden of establishing eligibility for fees under EAJA. This appeal followed.

**II.**

 Pursuant to EAJA, we review a district court's award or denial of attorney's fees for an abuse of discretion. *Reich v. Walter W. King Plumbing & Heating Contractor, Inc.,* 98 F.3d 147, 151 (4th Cir.1996). We review legal errors in construing EAJA de novo. *Thomas v. Nat'l Science Found.,* 330 F.3d 486, 491 (D.C.Cir.2003) (citing *Nat'l Ass'n of Mfrs. v. Dep't of Labor,* 159 F.3d 597, 599 (D.C.Cir.1998)); *Levernier Constr., Inc. v. United States,* 947 F.2d 497, 499 (Fed.Cir. 1991).

**III.**

**A.**

EAJA provides as follows:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Congress's aim in adopting this statute was " 'to ensure that certain individuals, partnerships, corporations ... or other organizations will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved.' " *Scarborough v. Principi,* —— U.S. ——, 124 S.Ct. 1856, 1861, —— L.Ed.2d —— (2004) (quoting H.R.Rep.

---

**2.** Subsequently, Hanover County amended its proposal for the waste-water treatment project and submitted a revised permit application to the Corps, after which the Corps reissued the NWP verification based on the amended proposal. Plaintiffs filed another suit challenging that amended proposal. *See Crutchfield v. U.S. Army Corps of Eng'rs,* 214

F.Supp.2d 593 (E.D.Va.2002). In the second lawsuit, the district court again set aside the Corps's verification of the NWPs, but we reversed that decision on appeal, *see Crutchfield v. County of Hanover,* 325 F.3d 211 (4th Cir. 2003). That related case, however, is not relevant to our determination of the fees issue.

No. 120, 99th Cong., 1st Sess., at 4 (1985)). *See also Kelly v. Bowen,* 862 F.2d 1333, 1334–35 (8th Cir.1999) (" 'The very purpose of the EAJA is to ensure that persons aggrieved by unreasonable governmental actions are not prevented from vindicating their claims by the potentially high costs involved in doing so.' ") (quoting *Trichilo v. Sec'y of HHS,* 823 F.2d 702, 707 (2d Cir. 1987)). In 1980, Congress enacted EAJA "to eliminate the barriers that prohibit small businesses and individuals from securing vindication of their rights in civil actions and administrative proceedings brought by or against the Federal Government." *Scarborough,* — U.S. at —, 124 S.Ct. at 1860 (internal quotation marks and citations omitted).

In order to establish eligibility for an award of attorneys fees,

> SEAJA requires: (1) that the claimant be a "prevailing party"; (2) that the government position was not "substantially justified"; (3) that no "special circumstances make an award unjust"; and, (4) that the fee application be submitted to the court within 30 days of final judgment and be supported by an itemized statement.

*Crawford v. Sullivan,* 935 F.2d 655, 656 (4th Cir.1991) (quoting 28 U.S.C. § 2412). The government neither argues that its position was "substantially justified" nor that any special circumstances exist to make the award unjust; nor does it assert that Broaddus did not prevail. Instead the government maintains that Broaddus was not a "party" as defined by the statute. EAJA defines a "party" as "an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B). Accordingly, the sole issue in dispute on appeal is whether Broaddus sufficiently demonstrated financial eligibility pursuant to EAJA.

### B.

■ The text of EAJA does not define "net worth" or give instructions on how to calculate an applicant's net worth; the statute merely unambiguously states that an award of EAJA fees is dependent upon one's net worth falling below the statutory maximum. *Id.* § 2412(d)(2)(B). Our sister circuits, however, have determined that generally accepted accounting principles[3] ("GAAP") should be used when determining one's net worth for EAJA fee purposes. For example, the Seventh Circuit acknowledged Congress's failure to define net worth, and responded as follows:

> [I]f [Congress] had thought about the question, it would have wanted the courts to refer to generally accepted accounting principles. What other guideline could there be? Congress would not have wanted us to create a whole new set of accounting principles just for use in cases under the Equal Access to Justice Act.

*Cont'l Web Press, Inc. v. NLRB,* 767 F.2d 321, 323 (7th Cir.1985); *see also Am. Pac. Concrete Pipe Co. v. NLRB,* 788 F.2d 586, 590–91 (9th Cir.1988) (agreeing with *Continental Web Press* ). More recently, the Tenth Circuit confirmed that "generally accepted accounting principles apply to the net worth inquiry." *Shooting Star Ranch,*

---

**3.** "The term 'generally accepted accounting principles' is a technical accounting term that encompasses the conventions, rules, and procedures necessary to define accepted accounting practices at a particular time. It includes not only broad guidelines of general application, but also detailed practices and procedures. Those conventions, rules, and procedures provide a standard by which to measure *financial presentations.*" American Institute of Certified Public Accountants, Statement of Auditing Standards No. 69, ¶ 69.02 (1992), *quoted in Sanders v. Jackson,* 209 F.3d 998, 1001 n. 3 (7th Cir.2000) (internal quotation marks and citations omitted) (emphasis added).

*LLC v. United States*, 230 F.3d 1176, 1178 (10th Cir.2000) (citing *Am. Pac. Concrete Pipe*, 788 F.2d at 591); *see also Kuhns v. Bd. of Governors of Fed. Reserve Sys.*, 930 F.2d 39, 41 (D.C.Cir.1991) (applying GAAP to EAJA); *City of Brunswick, Ga. v. United States*, 849 F.2d 501, 503 (11th Cir.1988) (holding that GAAP applies to EAJA, and stating that Congress intended "net worth" to be determined by subtracting total liabilities from total assets). *Cf. United States v. Heavrin*, 330 F.3d 723, 732 (6th Cir.2003) (following *Shooting Star Ranch* and applying GAAP to calculation of net worth in the analogous Hyde Amendment, 18 U.S.C. § 3006(A), context). We agree with our sister circuits that GAAP applies to EAJA, and net worth is calculated by subtracting total liabilities from total assets.

While the district court recognized, in its order denying attorney's fees, that it must use "generally accepted accounting principles" to determine Broaddus's net worth, it did not correctly apply those principles. In support of his application for EAJA attorney's fees, Broaddus presented the court with a sworn affidavit, in which he asserted that his net worth at the time he instituted the civil action was less than $2 million, and stated that he inherited Newcastle from his father. Additionally, Broaddus submitted a sworn affidavit from his personal accountant, Walter H. Rock, Jr., C.P.A. (hereinafter the "CPA"), who documented all of Broaddus's assets and liabilities, which amounted to less than $2 million. Broaddus also provided the district court with a sworn affidavit from a licensed real estate appraiser, Harrison M. Chavis,[4] who documented the value of Broaddus's two-third interest in Newcastle.

Despite Broaddus's extensive evidentiary proffer, the district court concluded that he failed to establish financial eligibility for an award of EAJA attorney's fees. Specifically, the court stated that "the value of an applicant's assets are determined by subtracting total liabilities from total assets, and the *acquisition cost* of an asset, *not its fair market value*, is used to set the value of the asset." J.A. 280 (emphasis added) (citations omitted). Regarding acquisition cost, the district court held as follows:

> Under generally accepted accounting principles, the acquisition cost of an asset is the actual incurred cost. This principle dictates that the acquisition cost for determining the net worth of Newcastle Farm is to be determined when Broaddus inherited his property interest from his father's estate. Broaddus's assertion that his acquisition cost was zero because he inherited Newcastle Farm is at odds with these fundamental precepts and it is unsupported.

*Id.* at 280–81 (internal citations omitted). The court further concluded that because Broaddus "failed to provide the Court with the acquisition cost of ... his personal assets and has made only an unsupported, and highly implausible, assertion as to the acquisition cost of Newcastle Farm," *id.* at 281, he was ineligible for attorney's fees under EAJA.

We find that the district court erred in two ways: (1) by requiring a heightened proffer of evidence necessary to establish an applicant's net worth; and (2) by rejecting Broaddus's claim based on his proffer regarding acquisition cost. We discuss these errors in turn.

---

**4.** While before the district court, the government disputed the admissibility of Chavis' affidavit regarding the appraisal of Newcastle, *see* Gov't Opp'n to Pl.'s Fees Application at 5–8 (J.A. 205–08), that issue is immaterial to our disposition because Hanover County conducted separate appraisals of Newcastle's value during the relevant time period, and it appears that the government has never disputed those appraisals.

### 1.

■ We turn first to an applicant's required proffer of evidence in order to establish financial eligibility for an award of EAJA attorney's fees. We recognize that under EAJA, the applicant bears the burden of establishing eligibility for attorney's fees. *Reich,* 98 F.3d at 150. While this Court has never specifically addressed how an applicant sufficiently establishes eligibility for attorney's fees pursuant to EAJA, several of our sister circuits have engaged the issue. For example, the Tenth Circuit affirmed a district court's decision to deny an applicant's request for EAJA attorney's fees, holding that "[w]hen challenged as to eligibility for an EAJA award, the party seeking such an award must do more than make a *bare assertion* that it meets the statutory criteria." *Shooting Star Ranch,* 230 F.3d at 1178 (emphasis added). In *Shooting Star Ranch,* the applicant's "*sole* evidence regarding its net worth" was "an *unverified* and *unsworn* letter from its accountant," and the court concluded that it was not "possible to calculate net worth by subtracting total liabilities from total assets based merely on the accountants letter." *Id.* (emphasis added). The court implied that had the applicant provided a sworn letter or affidavit from an accountant, which included a list of the applicant's assets and liabilities, the district court would have had ample information to determine net worth. *Id.* To be sure, the court noted that the applicant "failed to produce even an affidavit in the district court on an issue on which it had the burden of proof." *Id.* (citations omitted). Based on the applicant's weak record, the court determined it could not conclude that the district court's denial of attorney's fees was an abuse of discretion. *Id.*

Likewise, the Ninth Circuit, in reviewing a government appeal from a district court's decision to award EAJA fees, held that although "[t]he standard of proof is not articulated[,][t]he Supreme Court has stated that a 'request for attorney's fees should not result in a second major litigation.' Consequently, some informality of proof is appropriate." *United States v. 88.88 Acres of Land,* 907 F.2d 106, 108 (9th Cir.1990) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). *See also Cont'l Web Press,* 767 F.2d at 323 ("The proceeding to recover fees under the [Equal Access to Justice] Act is intended to be summary; it is not intended to duplicate in complexity a public utility commission's rate of return proceeding."). Ultimately, the Ninth Circuit upheld the district court's decision to grant the prevailing party attorney's fees because the applicant produced financial statements that were "qualified by his accountant," and the accountant then "made a separate affidavit under penalty of perjury that the balance sheets reflected [the applicant's] 'true and accurate net worth.' " *88.88 Acres of Land,* 907 F.2d 106 at 108.

Here, Broaddus, unlike the applicant in *Shooting Star Ranch,* did produce sufficient documentation to allow the district court to determine his net worth. His evidence included a sworn affidavit by his CPA, who had been preparing Broaddus's tax returns since 1982. The CPA averred that Broaddus's net worth fell below $2 million. J.A. 80–82. Moreover, in the CPA's affidavit, he informed the district court that Hanover County ordered two appraisals of Newcastle as of June 14, 2000, *id.* at 81, which valued the land after the condemnation and at the time the lawsuit was filed, the crucial date under EAJA, *see* 28 U.S.C. § 2412(d)(2)(B) (requiring applicant's net worth to be determined for EAJA purposes "at the time the civil action was filed"). One appraisal valued the land at $1,488,000.00 ("Caul appraisal"), and the other appraisal valued

the land at $1,609,420.00 ("Dorin appraisal"). J.A. 81.[5] Because Broaddus has only a two-third interest in the property, the value of his interest after condemnation ranged between $992,000.00 (two-thirds of the Caul appraisal) to $1,072,946.67 (two-thirds of the Dorin appraisal). The CPA calculated Broaddus's non-real estate assets to have a total value of $430,407.00. *Id.* at 81. Adding those assets to Newcastle's value, Broaddus's total assets amounted to between $1,422,407.00 and $1,503,353.67 (depending on which appraisal was used). Even if the pre-condemnation tax appraisal of Newcastle was employed, which it should not have been given the statute's command, *see* 28 U.S.C. § 2412(d)(2)(B), Broaddus's net worth—$1,517,133.33 for his interest in Newcastle; $430,407.00 for his non-real estate assets; and zero liabilities—would amount to only $1,947,540.33, which is still more than $50,000 less than the statutory maximum.

▇▇▇ After considering the evidence Broaddus presented to the district court, we agree with our sister circuits who have held that a determination of eligibility for EAJA fees should not result in a second trial, and that some informality of proof should be allowed. We further hold that a district court is capable of determining an applicant's net worth based upon a sworn affidavit by the applicant's CPA, provided that the affidavit includes documentation

of the applicant's liabilities and assets. If the CPA's affidavit allows the court to subtract liabilities from assets, thereby enabling the court to determine an applicant's net worth, then no further documentation is required. Accordingly, because Broaddus's evidence was nearly identical to that provided to the Ninth Circuit's in *88.88 Acres of Land,* and far exceeded that required by the Tenth Circuit in *Shooting Star Ranch,* we hold that such documentation was more than ample to demonstrate Broaddus's eligibility for an EAJA award.

### 2.

Turning now to the district's court's use of acquisition cost in determining net worth, we find that it was an abuse of discretion to hold that Broaddus failed to establish eligibility for an EAJA award, solely because he stated that the acquisition cost of Newcastle was zero. We find that the district court committed a legal error in its application of "acquisition cost." As discussed above, a party's eligibility for attorney's fees under EAJA is determined by ascertaining his or her "net worth," a statutory term which Congress did not define, but is determined by employing GAAP. *Supra* at 6 (citing cases).

In this case, the district court held that for net worth purposes under EAJA, assets are calculated by using "acquisition cost," not fair market value.[6] J.A. 280–81.

---

5. Furthermore, *prior to* condemnation, as of January 1, 2000, Hanover County valued all of Newcastle at $2,275,700 for tax appraisal purposes. J.A. 81.

6. Throughout the district court proceedings both sides argued over the correct valuation of Broaddus's assets, using fair market value as their calculus. *See* J.A. 62–82 (Broaddus's fee application relying on Newcastle's appraised value); *id.* at 201–210 (government's opposition disputing calculation of fair market value). Only in his reply to the government's opposition to his fee application did

acquisition cost ever arise. In that filing, Broaddus argued that an additional reason why he was entitled to fees was that acquisition cost was to be employed in determining his assets, and he proffered that his acquisition cost for Newcastle was zero because he inherited the property. *Id.* at 237. In fact, Appellee continues to argue that the fair market value of Newcastle, not Broaddus's acquisition cost, should be used in determining his net worth. *See* Br. of Appellee at 26 ("Broaddus's assets should be valued according to

Because Broaddus claimed his acquisition cost of Newcastle was zero—specifically, he inherited the property and did not pay for it[7]—the district court held that he was ineligible to recover fees. *Id.* at 281. The district court correctly recognized that in this context "acquisition cost" is not simply what Broaddus paid for the asset (or in this case, did not pay due to inheritance), but is the "price (at the date of death) at which the property would have changed hands between a willing buyer and a willing seller," *i.e.*, fair market value of the property at the time of inheritance. *Id.* (citing 26 C.F.R. § 20.2031–1(b) (setting forth how valuation of property is determined for the purposes of estate taxation)). As we illustrate, however, the district court's conception of "acquisition cost" under EAJA is flawed, and regardless of whether Broaddus had supplied an acquisition cost, *i.e.*, fair market value figure for the property at the time of his father's death, for Newcastle that was greater *or* less than its valuation at the time he filed suit, the record shows that he is nonetheless eligible for attorney's fees.

■ Although we have not previously addressed the issue, we find that the district court's inclination to determine the value of assets based on "acquisition cost," rather than fair market value was a reasonable reading of the statute. In so holding, we simply join our sister circuits in applying this prevailing, indeed uncontradicted, view of asset determination under EAJA. *See, e.g., 88.88 Acres of Land,* 907 F.2d at 107 (using acquisition cost to determine the value of assets); *City of Brunswick,* 849 F.2d at 503 (same); *Am. Pac. Concrete Pipe Co.,* 788 F.2d at 590 (same); *Cont'l Web Press, Inc.,* 767 F.2d at 323 (same). Our sister circuits have applied acquisition cost because of their reliance on a single sentence in the legislative history of EAJA: "In determining the value of assets, the cost of acquisition rather than fair market value should be used." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 15 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4953, 4994; S.Rep. No. 253, 96th Cong., 1st Sess. 17 (1979); *see also 88.88 Acres of Land,* 907 F.2d at 107 (quoting the legislative history); *City of Brunswick,* 849 F.2d at 503 (same); *Am. Pac. Concrete Pipe Co.,* 788 F.2d at 590 (same); *Cont'l Web Press, Inc.,* 767 F.2d at 323 (same).

The district court erred, however, when it seized upon that legislative history to reject Broaddus's claim when, in fact, the "cost of acquisition" calculus was included by Congress to aid applicants, not hinder them from pursuing attorney's fees under EAJA. *See* Gregory C. Sisk, *The Essentials of the Equal Access to Justice Act: Court Awards of Attorney's Fees for Unreasonable Government Conduct (Part One),* 55 La. L.Rev. 217, 299–300 (1994); Risa L. Lieberwitz, *Attorney's Fees, the NLRB, and the Equal Access to Justice Act: From Bad to Worse,* 2 Hofstra Labor L.J. 1, 42 (1984) (noting that the Model

their fair market value as of the date this lawsuit was filed.").

7. In making this argument, Broaddus's contention is indeed identical to those made by parties in cases in which our sister circuits have considered "cost of acquisition." Namely, Broaddus proffered what he paid for the property: nothing. *See e.g., 88.88 Acres of Land,* 907 F.2d at 107 (determining "cost of acquisition" based on what individual originally paid for his land); *Am. Pac. Concrete*

*Pipe,* 788 F.2d at 590 (considering as "cost of acquisition" the original cost of a company's assets minus depreciation); *Cont'l Web Press,* 767 F.2d at 323 (deriving net worth figure from a company's books then subtracting depreciation). In this case, however, Broaddus's seemingly good faith proffer as to the amount he paid for the land is obviously insufficient for an accurate net worth calculus under EAJA.

Rules of the Administrative Conference of the United States cited the "cost of acquisition" provision as "expressing congressional intent to permit the low valuation of assets, thereby enlarging the set of eligible parties"); Reuben B. Robertson & Mary Candace Fowler, *Recovering Attorney's Fees from the Government Under the Equal Access to Justice Act,* 56 Tul. L.Rev. 903, 925 (1982) (noting that "acquisition cost will often be easier to prove than market value, which might require expert appraisals or similar evidence, particularly since the relevant market value will be that on the date the proceeding began and not at the time the evidence of net worth is presented[,][and] in an inflationary economy, the acquisition cost approach will enable more parties to meet the Act's eligibility standards"). Professor Sisk writes that

> the acquisition cost measure is consonant with the "legislative design to equalize litigating resources" between private parties and the government. The alternative fair market value approach might exclude from eligibility a party of modest means that owns real property that has appreciated significantly in value, notwithstanding the likely unavailability of that asset to support the individual's or business' efforts to resist unjustifiable government action.

55 La. L.Rev. at 299 (footnotes omitted). Indeed, both legislative committee reports recognize EAJA's purpose was to empower individuals and small businesses in litigation against the government. *See*

H.R.Rep. No. 1418, 96th Cong., 2d Sess. 15 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4953, 4984 ("The bill rests on the premise that certain individuals ... may be deterred from seeking review of, or defending against unreasonable governmental action because of the expense involved in securing the vindication of their rights."); S.Rep. No. 253, 96th Cong., 1st Sess. 1 (1979) ("The purpose of the bill is to reduce the deterrents and the disparity [between the resources and expertise of these individuals and their government] by entitling certain prevailing parties to recover an award of attorney fees...."").

As such, the district court rejected Broaddus's claim for fees despite the fact that Broaddus supplied the court with the fair market value of his assets—the more difficult and burdensome figure to ascertain—rather than the "cost of acquisition," which Congress conceived of as easier for the layperson, who lacks access to accountants and audits, to obtain.[8] Besides being an unjust result under EAJA, it is also one that is directly contrary to that which would have followed whether the actual "cost of acquisition" figure for Newcastle at the time of Broaddus's father's death was revealed to be higher or lower than the current fair market values provided by Appellant. We thus proceed to illustrate the proposition that on these facts whether the initial "cost of acquisition" figure was higher or lower than its fair market value at the time Broaddus filed suit proves inconsequential in determining Broaddus's net worth.

---

8. It is certainly the unintended consequence of the legislative history that the "cost of acquisition" language prejudiced Broaddus at the district court in this case simply because he did not purchase Newcastle. Indeed, it would be a bitter irony if this language—intended to make an applicant's burden easier than that he face in establishing fair market value—made Broaddus's showing extraordi-

narily *more* difficult because of the coincidence that he did not buy the property, and thus had no direct knowledge of the "cost of acquisition." If this were the case, Broaddus would instead be forced to determine the fair market value of that property at the time of his father's death, an even more burdensome showing than the "fair market value" showing which Congress frowned upon.

First, were the proper "cost of acquisition" figure for Newcastle, at the time of Broaddus's father's death, lower than $1,609,420.00 (the higher appraisal of fair market value at the time of filing suit), Broaddus's net worth would have clearly fallen within the plain language of the statute and he would be entitled to fees. In fact, in *88.88 Acres of Land*, the Ninth Circuit confronted precisely such a situation, and we find our sister circuit's resolution of the issue to be well-reasoned. *See* 907 F.2d at 107–08. In that case, an individual prevailed in a condemnation proceeding and his land was valued at $1,404,190. *Id.* at 107. However, in his application for the EAJA award, the landowner submitted figures that the acquisition cost of the land was $43,001. *Id.* The government argued, as it has both here and at the district court level in the instant case, *supra* note 6, that the value of the land should have been set at the higher figure as appraised at the time suit was filed. *See 88.88 Acres of Land*, 907 F.2d at 107. The Ninth Circuit explicitly rejected the government's argument, *id.* ("The

government is wrong."), and relied on the legislative history and its language of "cost of acquisition" to find the lesser figure controlling, *id.* at 107–08.[9]

On the other hand, had the "cost of acquisition," *i.e.*, the fair market value of Newcastle at the time of the father's death, been higher, Broaddus would still be entitled to attorney's fees under EAJA.[10] Assuming *arguendo* that the "cost of acquisition" of Newcastle alone was over $2 million dollars, on these facts Broaddus's claim would not fail because it is clear that when the acquisition cost is properly reduced by depreciation of the asset, Broaddus's net worth does not exceed the EAJA maximum. Writing for the Seventh Circuit in *Continental Web Press*, Judge Posner illustrated why an acquisition cost which exceeded the EAJA maximum would not defeat a claim for attorney's fees, so long as the net worth at the time suit was filed was below the statutory maximum.

In *Continental Web Press*, the NLRB challenged a company's claim for

---

9. Additionally, the government argues that we should not employ "cost of acquisition" because it could produce absurd results. *See* Br. of Appellee at 20 (providing example of Babe Ruth having invested $7,000 in Coca-Cola stock in 1919, which would have been worth $875 million in 2000). Because the facts in the instant case do not threaten an absurd result, and as is made clear, Broaddus's net worth satisfies EAJA even if we employ fair market value, we will save the question of whether the "cost of acquisition" calculus may produce absurd results for another day. *But cf.* Sisk, 55 La. L.Rev. at 300 (noting that cost of acquisition helps the court fulfill EAJA's purpose where the applicant, like a family farmer, is "land rich but cash poor," and "land is committed to an ongoing use as part of the farming enterprise [where] [a]n appreciation of land value on paper, which has not been realized in a true gain through sale, is a poor measure of an individual's or entity's true resources available to cope with legal expenses").

10. Indeed, the district court appears to have been troubled by the possibility that the cost of acquisition of Broaddus's assets was higher than their fair market value. In a footnote describing the effect of Broaddus's lack of presentation of the acquisition costs of his property and personalty, the district court remarked: "Considering the significant decline in the value of stocks over the past several years and the fact that marketable securities comprise part of Broaddus's assets, failure to show the acquisition cost of the marketable securities is a significant omission." J.A. 282 n.2. For the reasons that follow, it is clear that even a "significant decline" in the value of Broaddus's securities or property would not cause his net worth to exceed the EAJA maximum. To the contrary, such a "significant decline" in the value of assets—*i.e.*, depreciation—of which the district court was wary *increased* the likelihood that Broaddus would qualify for fees under the statute.

attorney's fees under EAJA on the basis that the company's net worth, as demonstrated by its acquisition costs, was well above the statutory maximum before depreciation, although it was apparent that after depreciation its net worth fell well below the limit. *See* 767 F.2d at 322. The Seventh Circuit called the NLRB's argument "ridiculous," holding that depreciation must be coupled with an asset's acquisition cost to determine net worth. *Id.* at 322–23. Judge Posner employed the following example to illustrate the basis for his conclusion:

Suppose a firm in 1965 buys a printing press for $1 million dollars that is expected to last 20 years. In 1984, when the press has another year of life, as it were, it would be unrealistic to say that the company had a printing press worth $1 million; for unless there has been an enormous increase in the price of printing presses over the period, no one will pay $1 million for a press that is about to wear out.... It would be arbitrary to say that because depreciation may sometimes result in understating a company's net worth it should be disregarded, and the company valued as if every piece of its capital equipment were brand-new, which is the Board's position.

*Id.* at 322–23. In so reasoning, the court rejected the Board's position that "cost of acquisition" alone was controlling. The court held that "[t]here is no indication that Congress meant by 'the cost of acquisition' the undepreciated cost of acquisi-

tion." *Id.* at 323. Likewise, we follow the reasoning of the Seventh Circuit and hold that to determine the EAJA value of an asset, as is consistent with GAAP, its acquisition cost must be reduced by any accumulated depreciation of that asset. *See id.; see also Am. Pac. Concrete Pipe Co.*, 788 F.2d at 590–91 (following *Continental Web Press* and rejecting NLRB's argument that depreciation was irrelevant in determining acquisition cost); *Cf. City of Brunswick*, 849 F.2d at 503 (citing the depreciation discussions of *Continental Web Press* and *American Pacific Concrete* with approval).[11]

 Applying this method of asset calculation, we find that Broaddus is eligible for attorney's fees. Even if the initial "cost of acquisition" of Broaddus's assets exceeded the EAJA maximum, it is apparent that when depreciation is subtracted from such sums, the value of Broaddus's assets, as demonstrated by his sufficient evidentiary proffers regarding their present value, makes him eligible for fees. In making the more burdensome showing of his assets' fair market value at the time he filed suit, Broaddus sufficiently demonstrated their value for the purposes of EAJA. Here, the fair market value of Newcastle is, in fact, the sum that results after subtracting accumulated depreciation since Broaddus inherited the property from the "cost of acquisition" of that property. In that light, the initial acquisition cost of Newcastle, or Broaddus's other as-

---

11. Professor Sisk has elaborated on the rationality of subtracting depreciation from the cost of acquisition, reiterating that such a calculus accords with GAAP, and "[u]nless the statute were to clearly indicate otherwise, one would not expect a party to be obligated to create a special balance sheet crafted under peculiar accounting methods unique to the EAJA." 55 La. L.Rev. at 300. Furthermore, "because net worth is a rough measure of the resources available to pay legal expenses, the fact that assets have declined in value is further evidence of the limited resources the individual or entity may apply to attorney's fees." *Id.* at 301; *see also* Robertson & Fowler, 56 Tul. L.Rev. at 926 (stating that when "parties can demonstrate that the market value of their assets when the proceeding began was significantly lower than the acquisition cost, they should be permitted to use market value). In this way, eligibility will turn on the actual financial condition of a party, as it should, rather than on a technicality."

sets for that matter, is inconsequential to this disposition, as his evidentiary proffer far exceeds that required by EAJA and, under any calculus, the results of that economic analysis show that his net worth does not exceed $2 million.[12]

## IV.

For the foregoing reasons, we conclude that the record reveals that Broaddus was a "party" as defined by EAJA, and the district court abused its discretion in holding otherwise. Therefore, we reverse the judgment of the district court and remand with instructions to award appropriate attorney's fees.

*REVERSED AND REMANDED WITH INSTRUCTIONS*

WIDENER, Circuit Judge, concurring:

I concur in the result and largely in the opinion of the court, but I would add a word.

I cannot understand why the record in this case does not reveal the date of death of the owner of Newcastle, whose property has brought about this litigation by his descendants. The estate or inheritance tax return, or any appraisal filed in connection with that estate, should the same have been filed, would have settled the acquisition cost so far as I am concerned, subject only to some presently undisclosed reason why the same should not be used.

Also, as I understand it, the panel is in agreement that our use of the word depreciation does not indicate any opinion of ours that land is a depreciable asset, which

I understand is contrary to the general rule of income tax law.

---

12. Additionally, Appellee argues that Broaddus failed to include the value of his condemnation claim in his assets. Br. of Appellee at 23–26; *see also* J.A. 278 (the district court noted, somewhat misleadingly, "[t]he record does not reflect the value of Broaddus's condemnation claim which, of course, must be

counted among his assets"). That claim fails, however, because the above discussion makes clear that Broaddus's assets amount to only $1,947,540.33 even when the pre-condemnation tax appraisal of Newcastle is included in the net worth calculus.