The CITY OF BRUNSWICK, GEORGIA, Plaintiff–Appellee, Cross–Appellant,

v.

UNITED STATES of America, et al., Defendants–Appellants, Cross–Appellees.

No. 87–8543.

United States Court of Appeals, Eleventh Circuit.

July 11, 1988.

**502**

Hinton R. Pierce, U.S. Atty., Savannah, Ga., John C. Hoyle, Civil Div., Michael Jay Singer, Washington, D.C., for defendants-appellants, cross-appellees.

David F. Walbert, Walbert & Hermann, Atlanta, Ga., for plaintiff-appellee, cross-appellant.

Before JOHNSON and HATCHETT, Circuit Judges, and ESCHBACH[*], Senior Circuit Judge.

JOHNSON, Circuit Judge:

This case arose out of the City of Brunswick's challenge to the determination by the Federal Emergency Management Agency (FEMA) of the flood level figures used in calculating Brunswick's eligibility for federally subsidized flood insurance. The United States District Court for the Southern District of Georgia awarded Brunswick $324,492.16 in attorney fees, costs, and other expenses pursuant to the Equal Access to Justice Act, 28 U.S.C.A. § 2412. *See City of Brunswick v. United States*, 661 F.Supp. 1431 (S.D.Ga.1987). On appeal, the government challenges, *inter alia*, the district court's determinations that Brunswick met EAJA's "net worth" requirement and that the "position of the United States" was not "substantially justified." We agree with the government and thus reverse the district court.[1]

### I. *Brunswick's Net Worth*

As relevant to this issue, recovery under EAJA requires that the prevailing party be a "unit of local government, ... the net worth of which did not exceed $7,000,000 at the time the civil action was filed." 28 U.S.C.A. § 2412(d)(2)(B)(ii). The district court rejected the government's argument that Brunswick's net worth exceeded $7 million when the civil action was filed in July 1985. We reverse the district court.

This issue, apparently a question of first impression, turns on the definition of "net worth." The government relies on the "Annual Financial Report of the City of Brunswick for the Fiscal Year Ended June 30, 1985." The report, prepared by certified public accountants retained by Brunswick, shows a "Total Municipal Equity" of $22,010,596. The government's expert witness explained in an affidavit that "Total Municipal Equity" as used in the report equates to Brunswick's net worth. Consequently, the government argues that by exceeding EAJA's net worth limit Brunswick cannot recover under EAJA.

Brunswick responds that its net worth is less than $7 million because the term "net worth" should not include "restricted" assets (those assets not generally available to meet the payment of debts). Specifically, Brunswick argues that the government erred by counting Brunswick's water and sewage system as an asset. The inclusion or exclusion of this system determines

---

[*] Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

1. Because of our holding, we do not reach the government's challenges to (1) a fee award based, in part, on an hourly rate exceeding the statutorily presumed rate of $75 per hour, (2) the number of hours billed, and (3) the amount awarded for certain expenses. Similarly, our holding makes it unnecessary for us to address the district court's determination that Brunswick was not entitled to fees for the fees litigation (Brunswick's cross-appeal).

whether Brunswick's net worth exceeds EAJA's limit.

Congressional intent regarding the definition of "net worth" is sparse. The House and Senate Reports associated with EAJA's enactment in 1980 each contain identical language: " 'Net worth' is calculated by subtracting total liabilities from total assets. In determining the value of assets, the cost of acquisition rather than fair market value should be used." H.R. Rep. No. 1418, 96th Cong., 2d Sess. 15, *reprinted in* 1980 U.S. Code Cong. & Admin.News 4984, 4994; S.Rep. No. 253, 96th Cong., 1st Sess. 17 (1979).[2]

When EAJA was first enacted in 1980, however, Congress did not expressly provide for recovery by a unit of local government. Only when it adopted amendments to EAJA in 1985 did Congress do so. A statutory interpretation problem, as recognized by the district court, resulted because the term "net worth" generally is not used in reference to the financial status of a municipality.

The district court, relying on the legislative history connected with the 1985 addition,[3] reasoned that Congress was concerned with "ability to pay" and thus agreed with Brunswick's view that "restricted assets" were to be excluded when calculating Brunswick's net worth. *See* 661 F.Supp. at 1440. We disagree.

Congress determined that only those units of local government whose net worth did not exceed $7 million at the time of suit could receive an award under EAJA. We believe that the choice of the $7 million figure represents Congress' concern with the "ability to pay" factor. We discern from the legislative history that Congress, already having taken "ability to pay" into account by its choice of the $7 million figure, intended "net worth" to be determined by subtracting total liabilities from total assets. Congress thus did not intend for "ability to pay" to enter into the calculation of net worth.[4] We thus reject the argument that "restricted" assets should be excluded from that calculation.

Rather, we agree with the government's expert that the critical consideration for inclusion as an asset is whether the City has title to the asset.[5] It is undisputed that Brunswick held title to the water and sewage system. This system thus is to be included in the "net worth" calculation. Consequently, Brunswick's "net worth" clearly exceeded EAJA's limit and Brunswick cannot recover for an award under EAJA.

## II. *"Substantially Justified"*

The Equal Access to Justice Act provides in relevant part:

H.R.Rep. No. 120, 99th Cong., 1st Sess. 15 (part I), *reprinted in* 1985 U.S.Code Cong. & Admin. News 132, 143.

---

**2.** In the context of determining whether depreciation can be subtracted from a company's net worth, the Seventh and Ninth Circuits have held that Congress intended for "generally accepted accounting principles" to apply and consequently depreciation was to be subtracted. *See Continental Web Press, Inc. v. NLRB,* 767 F.2d 321, 323 (7th Cir.1985); *American Pacific Concrete Pipe Co. v. NLRB,* 788 F.2d 586, 590–91 (9th Cir.1986) (agreeing with *Continental Web*).

**3.** Congress expressly added units of local government in the 1985 Amendments because the House Judiciary Committee

believe[d] that small governmental units face the same inherent problems and deterrence factors as do small private businesses when involved in adversary adjudications or litigation with the United States. For example, units of local government are frequently involved in disputes with the Federal Government concerning questions of eligibility and implementation under a variety of Federal assistance programs.

**4.** This conclusion accords with the rule of statutory construction that waivers of sovereign immunity, as EAJA is, are to be construed narrowly and in favor of the sovereign.

**5.** *See generally* Affidavit of Edward J. Haller (May 21, 1987), *attached to* Memorandum in Support of Defendants' Motion to Alter or Amend the Court's Judgment on Attorneys' Fees, Costs, and Expenses (June 5, 1987) (R7:176). Brunswick contends that, by excluding pension assets from inclusion in Brunswick's total assets, the government's expert recognized that "restricted" assets were excluded from the "net worth" calculation. As the government's expert correctly pointed out, pension assets were excluded because Brunswick did not have title to them. *See id.* at 3.

a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was *substantially justified* or that special circumstances make an award unjust.

28 U.S.C.A. § 2412(d)(1)(A) (emphasis added). In the present case, the district court determined that FEMA's original agency action[6] was not substantially justified. Consequently, the district court determined that Brunswick was entitled to an award under EAJA.

We review the district court's finding for abuse of discretion. *Pierce, Secretary of Housing and Urban Development v. Underwood et al.,* —— U.S. ——, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). The government bears the burden of showing that its position was substantially justified. The standard for substantial justification is one of "more than mere reasonableness." The government must show that its case had a reasonable basis both in law and fact. *Hudson v. Secretary of Health and Human Services,* 839 F.2d 1453, 1456 (11th Cir.1988); *accord United States v. Certain Real Estate Property,* 838 F.2d 1558, 1561 (11th Cir.1988). As an alternative holding to our determination that Brunswick failed to meet EAJA's "net worth" requirement, we conclude that the district court abused its discretion when it held that the position of the United States was not "substantially justified."

## A. *The Government's Position at the Agency Level*

Brunswick sought flood insurance available to property owners at subsidized rates.[7] 42 U.S.C.A. §§ 4011, 4012(c). The Federal Emergency Management Agency sought to perform a flood insurance study (FIS) and then to create a flood insurance rate map (FIRM). *Id.* §§ 4101, 4104.

FEMA employed a private engineering firm to perform the FIS for Brunswick and the surrounding tri-county area. On July 14, 1982, Brunswick was provided copies of the FIS and draft FIRMs for information and review. The documents, which notified Brunswick of the proposed base flood elevations (BFE),[8] were subsequently published in *The Brunswick News* on August 25, 1983, and September 1, 1983.

In November 1983, Brunswick authorized Glynn County, Georgia, to prosecute an appeal to FEMA on Brunswick's behalf from the proposed BFEs. Later that month, pursuant to 42 U.S.C.A. § 4104(c),[9] Glynn County filed a timely joint appeal on behalf of itself and Brunswick. The joint appeal challenged (1) the technical interpretation of field survey data used to determine wave transmission coefficients and (2) whether the effect on wave heights of nonrigid herbaceous vegetation was considered.

On November 1, 1984, pursuant to its duty under 42 U.S.C.A. § 4104(e),[10] FEMA

---

**6.** Congress has made it clear that "position of the United States" means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action was based. *See, e.g., Hudson v. Secretary of Health & Human Services,* 839 F.2d 1453, 1456 n. 2 (11th Cir. 1988).

**7.** We use the district court's statement of facts, *see* 661 F.Supp. at 1433–36, as a guide to part of our rendition of the relevant facts.

**8.** The BFE is the estimated water level of a "flood having a one percent chance of being equaled or exceeded in any given year." The BFE affects both the insurance rates to be charged and the permissible types of construction in flood-risk zones.

**9.** Section 4104(c) provides in relevant part that "the community's appeal ... shall be filed with

the Director [of FEMA] not later than ninety days after the date of the second newspaper publication of the Director's notification."

**10.** Section 4104(e) provides in relevant part:

Upon appeal by any community ... the Director shall review and take fully into account any technical or scientific data submitted by the community that tend to negate or contradict the information upon which his proposed determination is based. The Director shall resolve such appeal by consultation with officials of the local government involved, by administrative hearing, or by submission of the conflicting data to an independent scientific body or appropriate Federal agency for advice.... The Director shall make his determination within a reasonable time.

sent its response by certified mail/return receipt requested to Reginald E. Holtzendorf, Mayor of Brunswick.[11] In this response, FEMA determined that no adjustments to the wave transmission coefficients were warranted and some site-specific reductions because of marsh grass effects were warranted in the BFEs. FEMA enclosed a revised FIRM and stated that Brunswick had thirty days to review and comment on the enclosed maps. Brunswick did not submit additonal scientific or technical data.

On December 19, 1984, FEMA notified Brunswick[12] by certified letter that the final FIRM would go into effect on June 19, 1985, and that Brunswick had six months to adopt appropriate ordinances regulating development in the flood-risk areas. At this point, 42 U.S.C.A. § 4104(g) (emphasis added) became applicable: "Any appellant aggrieved by any final determination of the Director upon administrative appeal ... may appeal such determination to the United States district court for the district within which the community is located not more than *sixty days* after receipt of notice of such determination."

Although Brunswick's right to judicial review lapsed in February 1985, Brunswick did not respond to FEMA's notice until May 1, 1985. Brunswick presented its response at the agency level. Brunswick sought a nine-month extension of the FIRM's effective date, claimed that the FIS was technically deficient, and asserted that FEMA should have conducted an environmental impact statement (EIS) for the Brunswick area. FEMA refused to grant the extension, stated that an EIS was not required, permitted Brunswick to submit additional flood data (which Brunswick did), and did not alter the FIS or FIRM.

We hold that "the position of the United States" at the agency level was "substantially justified." FEMA followed the procedures outlined in the relevant portions of 42 U.S.C.A. § 4104. FEMA advised Brunswick of the right to respond to the proposed BFEs. Brunswick, jointly with Glynn County, challenged two aspects of the proposed BFEs.[13] FEMA, pursuant to its statutory duty, addressed Brunswick's challenges and informed Brunswick that Brunswick had thirty days to respond before FEMA would finalize the BFEs. Brunswick did not respond. FEMA then made its final determinations and so notified Brunswick. Well outside of the two-month period for *judicial* review, Brunswick sought, before the *agency*, additional relief, which was denied in large part.

When a community has had two previous opportunities to challenge the accuracy of the FIS and the community, after FEMA's final determination and after the time period for judicial review has lapsed, seeks to present new challenges to the FIS, the agency is substantially justified in refusing to grant an extension of the FIRM's effective date and in refusing to modify the FIS. As the district court recognized when ruling on a timeliness challenge to a claim in Brunswick's subsequent suit:

If a community could come forth with piecemeal objections to an FIS over an extended period of time, FEMA could never implement a final rate map, and the Congressional policy underlying the [Flood Insurance] Program would be thwarted. Indeed, Congress undoubtedly foresaw this problem when it deliberately limited appeals in order to avoid "the pitfall of permitting those unnecessary delays and self-interested procras-

---

11. Brunswick stated in its complaint that Holtzendorf was not the mayor at that time. *See* R1-1-7 para. 21. Even assuming Brunswick did not receive the notice, agency regulations require the community to tell FEMA what local official is in charge of flood insurance matters.

12. FEMA sent this notification to Holtzendorf. Brunswick admitted that it received this notification. *See* R3-90-6.

13. In its complaint, Brunswick stated that at the time of the joint appeal, "and up until April, 1985, [it] did not realize that Glynn County did not have and had not employed anyone with sufficient expertise properly to evaluate the FIS's [sic] and to assist in an appeal involving this abstruse and complex technology." *See* R1-1-7 para. 20. This allegation has no relevance to our inquiry of whether the government's position was substantially justified.

tinations which would make the flood insurance program unworkable."

*City of Brunswick v. United States,* No. 285-142, slip op. at 10 (S.D.Ga. Jan. 9, 1986) (quoting 119 Cong.Rec. 42,885 (1973) (statement of Rep. Barrett)). FEMA thus was substantially justified in its conduct when, as here, it declined to allow a community to avoid the proper appeals process and engage in piecemeal litigation. Consequently, the district court erred when it focused on whether FEMA was substantially justified as to the accuracy of the FIS. *See* 661 F.Supp. at 1441-42. Rather, the true agency action giving rise to Brunswick's suit was FEMA's refusal to grant an extention of the FIRM's implementation and reexamine the FIS.

### B. *The Government's Pre–Stipulation Litigation Position*

On July 16, 1985, Brunswick filed suit against FEMA, seeking to enjoin the agency from implementing the FIRM and requesting declaratory relief on the basis of the following contentions: (1) that the proposed BFEs were inaccurate, (2) that FEMA was obligated to perform a site-specific EIS before implementing a FIRM, (3) that FEMA violated its own regulations by failing to conduct notice-and-comment rule making on the methodology to be used in performing the FIS, and (4) that FEMA unlawfully delegated critical fact-finding functions to a private entity (i.e., the private engineering firm) without exercising meaningful supervision over its work.

■ On January 9, 1986, the district court granted the government's summary judgment motion as to the first count. The district court reasoned that it lacked subject matter jurisdiction because Brunswick had failed to apply for judicial review of final agency action within 60 days as required by 42 U.S.C.A. § 4104(g). The other three counts survived for decision at trial.

Before trial, the parties reached a court-approved settlement stipulation that they would submit any unresolved issues regarding FEMA's performance of the FIS to an arbitration panel of experts. FEMA agreed to modify the FIRM if the arbitration panel reached new base flood elevations.

We hold that "the position of the United States was substantially justified" at this point in the litigation.[14] As set forth above, Brunswick sought relief on four grounds, and the district court determined that Brunswick's challenge to the accuracy of the FIS was time-barred. Upon Brunswick's motion for attorney fees, the district court concluded that the government was "substantially justified" in its defense of the other three claims. *See* 661 F.Supp. at 1442-43. Brunswick does not suggest otherwise on appeal.[15]

### C. *The Government's Post–Stipulation Litigation Position*

On June 12, 1986, the arbitration panel submitted its report. *See* R4:130 [hereinafter Arbitrators' Report]. The report required the establishment of new BFEs and led FEMA to issue a new FIRM. The district court determined that, based on the arbitrators' report, FEMA was not substantially justified based on its performance of the FIS and FIRM. *See* 661 F.Supp. at 1442.

■ The district court abused its discretion by examining only the accuracy of the FIS. As discussed above, Brunswick, through its joint appeal with Glynn County, had challenged the accuracy of the FIS at the agency level. Only after the time for judicial review had lapsed did Brunswick seek to challenge the FIS on those grounds raised before the arbitration panel, and FEMA was substantially justified in refusing to reexamine the merits of the FIS.

---

**14.** We note that the government was substantially justified in entering into the stipulation because three contested issues were removed from the case.

**15.** Our holding as to the government's pre-stipulation litigation position does not end our inquiry. *Porter v. Heckler,* 780 F.2d 920, 923 (11th

Cir.1986) (quoting *Environmental Defense Fund, Inc. v. Watt,* 722 F.2d 1081, 1086 (2d Cir.1983)), teaches that "it is 'incumbent upon the government to abandon its opposition to the other party as soon as it becomes apparent that its litigation stance is not substantially justified.'"

The district court should have focused on FEMA's response to the merits of Brunswick's challenge. Because Brunswick's challenge was not timely, FEMA had no duty to respond to the merits of that challenge until the stipulation caused the merits to become the focus before the arbitration panel. Consequently, the government had to be "substantially justified" in the position it took before the arbitration panel.

Brunswick presented to the arbitration panel challenges to four aspects of the FIS: (1) selection and use of storm data, (2) wave height analysis, (3) use of the TTSURGE model, and (4) topography. Our review of the arbitrators' report and its supporting documents demonstrates that the government was substantially justified in the position it took before the arbitration panel. First, the panel credited the testimony by government witnesses and determined that the government's wave height analysis was properly conducted. *See* Arbitrators' Report at 18. Second, the panel adopted the conclusions of the government's witness as to pressure distribution and nineteenth century storm data. *See id.* at 12–13, 29. Third, FEMA acknowledged that the central pressure distribution of exiting storms should differ from those of entering and alongshore storms, that proper use of storm frequencies would tend to raise flood elevations, and that errors in the FIS related to joint probability calculations should be corrected in determining new BFEs. *See id.* at 7–8, 25. Fourth, FEMA promised to incorporate into the FIRM Riverside data supplied by Brunswick. *See id.* at 26. Finally, although the arbitration panel did not agree entirely with the position taken by the government before it, our review of the record indicates that the government was substantially justified in the position it took. The district court abused its discretion by focusing on the accuracy of the FIS, instead of focusing on the position the government took before the arbitration panel.

Accordingly, we REVERSE the district court because Brunswick did not meet EAJA's "net worth" requirement. We also REVERSE the district court because "the position of the United States was substantially justified."