DECISION
Before this Court is a motion for attorney's fees and costs filed by Plaintiff Donald B. MacDougall Jr. pursuant to the Equal Access to Justice Act, R.I. Gen. Laws § 42-92-1 et seq.
(1985, as amended 1994).[1] Plaintiff's motion comes before this Court following his successful appeal to the Rhode Island Superior Court from a decision of the Town of Charlestown Zoning Board of Review that denied him a dimensional variance. For the reasons set forth in this Decision, this Court finds that Plaintiff is legally entitled to recover reasonable litigation expenses under the provisions of this Act.
 I. FACTS AND TRAVEL[2]
The underlying action began in July 2004 when Plaintiff submitted an application to the Zoning Board for a dimensional variance to construct a "removable wooden *Page 2 
cover," fashioned as a deck, over an existing and partially-exposed septic system. Shortly thereafter, the Board held a hearing to consider Plaintiff's application. Despite there being no objectors and no testimony offered in opposition to the request, the Board voted to deny Plaintiff's application. Plaintiff appealed the Board's 2004 decision to the Rhode Island Superior Court. While his appeal was pending, Plaintiff continued to seek other remedies, including filing additional applications for dimensional relief.
Plaintiff filed a second application for the same dimensional relief in 2005. Plaintiff withdrew his 2005 application, however, after the Town Solicitor informed him that he would seek to have the application barred based on the doctrine of administrative finality.
Plaintiff filed a third application for dimensional relief in 2007. His 2007 application made a minor modification to the height of the proposed deck, but was otherwise substantially similar to the prior applications. In June 2007, the Zoning Board held a hearing on Plaintiff's third application, admitted into evidence the transcript from the earlier 2004 hearing, and received new testimony and evidence. Thereafter, the Board once again denied Plaintiff's request for dimensional relief. From this denial, Plaintiff filed a second appeal to the Superior Court.
The Superior Court consolidated Plaintiff's two appeals for decision. On February 21, 2008, it rendered its decision, dismissing Plaintiff's appeal of the Zoning Board's 2004 decision as untimely filed and reversing the Zoning Board's 2007 decision.MacDougall v. Town of Charlestown Zoning Bd. of Review, C.A. Nos. WC 07-0474, WC 04-0564, 2008 R.I. Super. LEXIS 34, at *18 (R.I. Super. Ct. Feb. 21, 2008) (Thompson, J.). With regard to the latter decision of the Zoning Board, the hearing *Page 3 
justice first admonished the Board for failing to make the required findings of fact and conclusions of law.Id. at *4-5 n. 1, *6-7 n. 2. Noting that the Board had two prior opportunities to discharge its statutory duties and, on each occasion, failed to craft an adequate decision, the hearing justice proceeded to review the entire record to assess the evidence adduced at the hearing. Id. at *6-7 n. 2. Upon consideration of the record, the hearing justice found that "the Board's decision was not supported by substantial evidence, was in excess of statutory authority, . . . constituted an abuse of discretion[,] . . . [and] was clearly erroneous in light of the reliable, probative and substantial evidence contained in the entire record showing that the proposed structure satisfied all of the Ordinance requirements for the granting of dimensional relief." Id. at *17. Accordingly, on April 2, 2008, the hearing justice entered an order reversing the Board's 2007 decision and "remand[ing] [the matter] to the Zoning Board for the limited and sole purpose of granting the requested dimensional variances. . . ." MacDougall v. Town of CharlestownZoning Bd. of Review, C.A. Nos. WC 07-0474, WC 04-0564, at ¶¶ 1-2 (R.I. Super. Ct., filed Apr. 2, 2008) (Thompson, J.) (Order).
On April 21, 2008, the Town Solicitor filed a notice of appeal with the Washington County Superior Court to challenge the hearing justice's decision. The Zoning Board held a hearing on May 8, 2008 regarding that decision. (Town of Charlestown Zoning Bd. of Review Hr'g Tr., May 8, 2008, at 1-2). At the hearing, the Town Solicitor informed the Board that he had filed the notice of appeal and, following the hearing, intended to petition the Rhode Island Supreme Court for a writ of certiorari *Page 4 
to review the hearing justice's decision.[3] Id. at 3-4. The Town Solicitor then suggested that the Zoning Board continue the hearing (which the hearing justice had ordered be for thesole purpose of granting Plaintiff's requested dimensional variance) pending appeal to the Supreme Court. Id. at 4-5. Counsel for Plaintiff strenuously objected to this course of action as highly unfair to Plaintiff, noting that the hearing justice's order had not been stayed and that the granting of a continuance directly contravened the order. Id. at 5-6. Over counsel's vehement objection, the Zoning Board acquiesced to the Town Solicitor's request and, at the conclusion of the hearing, voted unanimously to continue the matter until June 17, 2008.Id. at 6-7.
Following the Zoning Board's May 8, 2008 hearing, the Town Solicitor filed a Motion to Stay the hearing justice's order, and Plaintiff filed a Motion for Contempt. After hearing these competing motions on June 16, 2008, the hearing justice denied the Board's Motion to Stay and granted Plaintiff's Motion for Contempt.MacDougall v. Town of Charlestown Zoning Bd. of Review, C.A. Nos. WC 07-0474, WC 04-0564, at ¶¶ 1-2 (R.I. Super. Ct., filed June 20, 2008) (Thompson, J.) (Order). In the order, the hearing justice further instructed that "the Town of Charlestown Building Official is hereby ordered to issue the appropriate Building Permit consistent with the dimensional and lot coverage variances requested. . . ."Id. at ¶ 2. Thereafter, Plaintiff obtained a building permit to construct the proposed deck.[4] *Page 5 
Notwithstanding this order, the Board pressed its appeal of the hearing justice's underlying decision. Curiously, however, there is no record that the Town Solicitor ever filed a petition for writ of certiorari. Rather, the Board continued with its direct appeal to the Supreme Court based on the notice of appeal that the Town Solicitor had filed previously on its behalf.
Plaintiff filed a motion to dismiss the appeal with a supporting memorandum of law on the grounds that a notice of appeal is not the proper means by which to seek Supreme Court review of a Superior Court decision on an appeal of a zoning matter. Moreover, Plaintiff argued that even if the Zoning Board had pursued the proper means of seeking review — a petition for writ of certiorari — the law requires dismissal because a zoning board does not have standing to seek Supreme Court review of a Superior Court decision reversing a zoning board order. Plaintiff petitioned for attorney's fees in connection with that motion. He did not make that request pursuant to the Equal Access to Justice Act.
In response, the Board unilaterally filed a Notice of Dismissal Stipulation with the Supreme Court, purporting to dismiss its pending appeal. Plaintiff responded by filing a Motion to Strike the Board's Notice of Dismissal Stipulation, identifying a series of substantive and procedural maladies with the Board's filing, including: (1) the improper application of the Superior Court rules in a matter before the Supreme Court; (2) the inability of a defendant to file a voluntary dismissal; (3) the failure to have the stipulation signed by both parties; (4) the untimeliness of the filing; and (5) the highly prejudicial nature of denying Plaintiff the right to be heard on his pending motion. Again, Plaintiff *Page 6 
requested attorney's fees in connection with the motion. Again, he did not make that request pursuant to the Act.
On September 5, 2008, the Supreme Court entered an order granting Plaintiff's Motion to Strike the Board's Notice of Dismissal Stipulation as well as Plaintiff's Motion to Dismiss the Board's appeal. MacDougall v. Town of Charlestown Zoning Bd. ofReview, C.A. No. 08-145-A (R.I., filed Sept. 5, 2008) (Order). In tandem with the dismissal, however, the Supreme Court denied Plaintiff's requests for attorney's fees. Id.
Remarkably, the Supreme Court's dismissal of the Board's appeal did not put the matter to rest. At a hearing held on March 17, 2009, the Board represented erroneously that its appeal to the Supreme Court was still pending. (Town of Charlestown Zoning Bd. of Review Mins., Mar. 17, 2009, at 3 (approved Apr. 21, 2009)).
Before this Court, Plaintiff invokes the Equal Access to Justice Act, R.I. Gen. Laws § 42-92-1 et seq. (1985, as amended 1994), and requests reimbursement for reasonable litigation expenses that he incurred as a result of: (1) the hearings before the Zoning Board; (2) his underlying appeals to the Superior Court challenging the Board's decisions; (3) the Motion for Contempt that he had to file to enforce the hearing justice's order; (4) the Board's appeal to the Supreme Court; and (5) the subsequent incorrect representation of the Board that its appeal was still pending before the Supreme Court.
 II LAW AND ANALYSIS
The Rhode Island legislature enacted the Equal Access to Justice Act "to mitigate the burden placed upon individuals and small businesses by the arbitrary and capricious decisions of administrative agencies made during adjudicatory proceedings."Taft v. *Page 7 Pare, 536 A.2d 888, 892 (R.I. 1988) (citing R.I. Gen. Laws § 42-92-1 et seq. (1985, as amended 1994)). In the Act's stated purpose, the legislature declared that "individuals and small businesses should be, in all fairness, subject to state and/or municipal reimbursement of reasonable litigation expenses when the individual or small business prevails in contesting an agency action [or adjudicatory proceeding], which was without substantial justification." R.I. Gen. Laws §§ 42-92-1(b), 42-92-3. To this end, the Act provides, in pertinent part, as follows:
 (a) Whenever the agency conducts an adjudicatory proceeding subject to this chapter, the adjudicative officer shall award to a prevailing party reasonable litigation expenses incurred by the party in connection with that proceeding. The adjudicative officer will not award fees or expenses if he or she finds that the agency was substantially justified in actions leading to the proceedings and in the proceeding itself. The adjudicative officer may, at his or her discretion, deny fees or expenses if special circumstances make an award unjust. The award shall be made at the conclusion of any adjudicatory proceeding, including, but not limited to, conclusions by a decision, an informal disposition, or termination of the proceeding by the agency. The decision of the adjudicatory officer under this chapter shall be made a part of the record and shall include written findings and conclusions. No other agency official may review the award.
 (b) If a court reviews the underlying decision of the adversary adjudication, an award for fees and other expenses shall be made by that court in accordance with the provisions of this chapter.
Id. § 42-92-3.
To be considered a "party" eligible to collect reasonable litigation expenses under the Act, an individual must demonstrate that his or her "net worth [was] less than five hundred thousand dollars ($500,000) at the time the adversary adjudication was initiated." Id. § 42-92-2(5). The Act defines the term "[r]easonable litigation expenses" *Page 8 
as "those expenses which were reasonably incurred by a party in adjudicatory proceedings, including, but not limited to, attorney's fees, witness fees of all necessary witnesses, and other costs and expenses as were reasonably incurred."Id. § 42-92-2(6). The Act adds the qualification, however, that "[t]he award of attorney's fees may not exceed one hundred and twenty-five dollars ($125) per hour, unless the court determines that special factors justify a higher fee."Id. § 42-92-2(6)(i). Further, the Act provides that "[n]o expert witness may be compensated a rate in excess of the highest rate of compensation for experts paid in this state."Id. § 42-92-2(6)(ii).
 A Net Worth
The parties in this case have represented to this Court that the sole issue in dispute between them as to Plaintiff's claim for reasonable litigation expenses is whether Plaintiff meets the statutory definition of a "party" under the Act. Seeid. § 42-92-2(5). Specifically, the parties disagree as to whether Plaintiff's net worth fell below the Act's statutory threshold of $500,000 at the time Plaintiff commenced litigation against the Zoning Board in July 2004.[5] The parties each have submitted affidavits that purport to identify Plaintiff's net worth as of the date at issue.[6] Upon review of these competing *Page 9 
affidavits, it is readily apparent that the heart of the dispute involves the proper valuation of two parcels of real property that Plaintiff owned in Charlestown, Rhode Island in July 2004 — a property located at 35 Lucas Avenue and a property located at 69 West Niantic Avenue (collectively, "the properties").[7]
According to the Board, the properties should be assessed based on their fair market value as of July 2004. Under this fair market value approach, the Board contends that the Lucas Avenue property and the West Niantic Avenue property should be valued at $756,500 and $931,800, respectively. Conversely, Plaintiff maintains that if the properties are to be considered as assets for the purpose of the Act's net worth calculation, they should be assessed based on their acquisition cost. Applying this acquisition cost formula, Plaintiff argues that the Lucas Avenue property and the West Niantic Avenue property should be valued at $380,000 and $220,000, respectively. *Page 10 
Given Plaintiff's proffered offsetting total liabilities figure, which the parties do not dispute, whether the properties are valued in accordance with the fair market value approach, as the Board suggests, or the acquisition cost approach, as Plaintiff suggests, will determine whether Plaintiff's net worth falls below the $500,000 statutory ceiling. Applying the fair market value approach, minus liabilities, would yield a calculation of Plaintiff's net worth well above the $500,000 statutory threshold; applying the acquisition cost approach, minus liabilities, would lower Plaintiff's net worth to well below that threshold.
The question for this Court as to which valuation approach to apply in calculating net worth under the Act presents an issue of first impression in Rhode Island. Indeed, the Act does not define the term "net worth" or provide guidance on how to calculate this figure nor have our courts yet been called upon to interpret this provision. Nonetheless, our Supreme Court has instructed that "Rhode Island's Equal Access to Justice Act is modeled on the Federal Equal Access to Justice Act," and thus, a reviewing court "should follow the construction put on it by the federal courts, unless there is strong reason to do otherwise." Krikorian v. R.I. Dept. of HumanServs., 606 A.2d 671, 674 (R.I. 1992) (internal quotations omitted). Given that the Federal Equal Access to Justice Act, 28 U.S.C.A. § 2412, contains a markedly similar clause that sets a net worth threshold for eligibility, reference to the decisions of federal courts that have construed this provision is instructive.
The Federal Equal Access to Justice Act allows individuals to have a much higher net worth than Rhode Island and still recover reasonable litigation expenses. It provides that a "party" eligible to recover fees and other expenses is "an individual whose *Page 11 
net worth did not exceed $2,000,000 at the time the civil action was filed." 28 U.S.C.A § 2412(d)(2)(B). In interpreting this provision, federal courts have determined that generally accepted accounting principles ("GAAP")[8] should be used to calculate an individual's net worth. See Broaddus v. U.S. Army Corps of Eng'rs,380 F.3d 162, 166-67 (4th Cir. 2004); Shooting Star Ranch, LLC v.U.S., 230 F.3d 1176, 1178 (10th Cir. 2000); City of Brunswick,Ga. v. U.S., 849 F.2d 501, 503 (11th Cir. 1988). Using GAAP, net worth is calculated by subtracting total liabilities from total assets. Broaddus, 380 F.3d at 167.
To value an individual's total assets for a GAAP net worth calculation, the "prevailing[] . . . [and] uncontradicted" approach employed by federal courts is to use the acquisition cost of an asset rather than its fair market value. Broaddus,380 F.3d at 170; see U.S. v. 88.88 Acres of Land,907 F.2d 106, 107-08 (9th Cir. 1990); City of Brunswick,849 F.2d at 503; Am. Pac. Concrete Pipe Co.,Inc. v. N.L.R.B., 788 F.2d 586, 590 (9th Cir. 1986); Cont'lWeb Press, Inc. v. N.L.R.B.,767 F.2d 321, 323 (7th Cir. 1985).[9] This interpretation of asset valuation is consistent with the legislative history of *Page 12 
the Federal Equal Access to Justice Act, which specifies that "[i]n determining the value of assets, the cost of acquisition rather than fair market value should be used." H.R. Rep. No. 1418, 96th Cong., 2d Sess. 15 (1980).
In considering the underlying rationale for this valuation approach, commentators have opined that Congress designed the acquisition cost calculus to broaden the number of individuals eligible for attorney's fees under the federal act. See
Risa L. Lieberwitz, Attorney's Fees, the NLRB, and the EqualAccess to Justice Act: From Bad to Worse, 2 Hofstra Labor L.J. 1, 42 (1984) ("The House Report defines net worth as the difference between total assets and total liabilities, with the value of assets to be determined by the cost of acquisition rather than fair market value. The Model Rules of the Administrative Conference of the United States have cited this section of the legislative history as expressing congressional intent to permit the low valuation of assets, thereby enlarging the set of eligible parties."); Reuben B. Robertson Mary Candace Fowler, Recovering Attorney's Fees from the GovernmentUnder the Equal Access to Justice Act, 56 Tul. L. Rev. 903, 925 (1982) ("[A]cquisition cost will often be easier to prove than market value, which might require expert appraisals or similar evidence, particularly since the relevant market value will be that on the date the proceeding began and not at the time the evidence of net worth is presented[,] [and] in an inflationary economy, the acquisition cost approach will enable more parties to meet the Act's eligibility standards."). Additionally, one oft-cited commentator has noted that
 the acquisition cost measure is consonant with the legislative design to equalize litigating resources between private parties and the government. The alternative fair market value approach might exclude from eligibility a party of modest means that owns real property that has appreciated significantly in value, notwithstanding the *Page 13 
likely unavailability of that asset to support the individual's or business' efforts to resist unjustifiable government action.
Gregory C. Sisk, The Essentials of the Equal Access to JusticeAct: Court Awards of Attorney's Fees for UnreasonableGovernment Conduct (Part One), 55 La. L. Rev. 217, 299 (1994) (internal citations and quotations omitted).
Echoing the sentiments of these commentators, the United States Court of Appeals for the Fourth Circuit noted that "both legislative and committee reports recognize [the Federal Equal Access to Justice Act's] purpose was to empower individuals and small businesses in litigation against the government."Broaddus, 380 F.3d at 171 (citing H.R. Rep. No. 1418, 96th Cong., 2d Sess. 15 (1980) ("The bill rests on the premise that certain individuals . . . may be deterred from seeking review of, or defending against[,] unreasonable governmental action because of the expense involved in securing the vindication of their rights."); S.Rep. No. 253, 96th Cong., 1st Sess. 1 (1979) ("The purpose of the bill is to reduce the deterrents and the disparity [between the resources and expertise of these individuals and their government] by entitling certain prevailing parties to recover an award of attorney fees. . . .")). Thus, the Fourth Circuit opined that "the `cost of acquisition' calculus was included by Congress to aid applicants." Id. at 170.
Mindful of the analogous net worth provision of the Federal Equal Access to Justice Act, its legislative history, its underlying purpose, and the federal court authority interpreting that Act, this Court can discern no reason to interpret the net worth provision of the Rhode Island Equal Access to Justice Act any differently than its federal counterpart. Indeed, a comparison of the definition of an eligible "party" set forth in the *Page 14 
federal act, 28 U.S.C.A. § 2412(d)(2)(B), with the definition of an eligible "party" contained in the Rhode Island Act, R.I. Gen. Laws § 42-92-2(5), reveals that the two terms are functionally synonymous: each provides that an individual's eligibility to collect reasonable litigation expenses is dependent upon a showing that his or her net worth was below the statutory ceiling when the underlying action commenced.
Moreover, similar to the federal act, the underlying purpose of Rhode Island's Act is to empower "individuals . . . [who] are least able to contest agency actions[.]" R.I. Gen. Laws § 42-92-1(a). Our Supreme Court has followed the federal courts in interpreting this statute broadly, enlarging rather than limiting the number of parties eligible to recoup their litigation expenses. See Krikorian,606 A.2d at 674-75 (following the "virtual[ly] unanim[ous]" federal approach that allows a party represented free of charge by legal aid organizations — irrespective of whether the party incurred out-of-pocket expenses — to collect reasonable litigation expenses under the Act on the same basis as all other eligible parties). To adopt the Board's proffered fair market value approach to asset valuation would be counter to this purpose. Indeed, were this Court to employ the fair market value calculus, the class of persons eligible to recoup reasonable attorney's fees and expenses would be unduly limited, barring many individuals from recovering reasonable litigation expenses based on the appreciation of their non-monetary assets, notwithstanding the fact that they had realized no true financial gain from that appreciation. Moreover, the fair market value approach would be more complicated, expensive and time-consuming by requiring parties to retain experts and litigate in collateral proceedings the issue of the appropriate fair market value calculation. The last thing this Court wants to do is require litigants to incur more litigation expenses in the *Page 15 
course of litigating a fee request. Finding the fair market value method of asset valuation inconsistent with the underlying purposes of the Act, this Court declines to adopt it. Accordingly, this Court holds that the net worth requirement of the Rhode Island Equal Access to Justice Act is to be calculated by subtracting total liabilities from total assets, with the acquisition cost of an asset, not its fair market value, to be used to assess the value of the asset.
Upon review of the submitted affidavits, therefore, it is readily apparent that Plaintiff has employed the proper asset valuation method — namely, the acquisition cost method — in calculating his total net worth as of the inception of this litigation in July 2004. (MacDougall Aff. ¶ 4, July 28, 2010) ("The second analysis that I asked Mr. Alger[,] [the certified public accountant][,] to perform was a calculation of my net worth that valued the real estate that I owned in July of 2004 based on my acquisition cost of that real estate."). Plaintiff's affidavit provides that, under this formula, his certified public accountant calculated his net worth to be well below the $500,000 statutory ceiling.Id. at ¶¶ 4-7, 9. As such, this Court finds that Plaintiff is an eligible "party" under the Rhode Island Equal Access to Justice Act who is legally entitled, subject to further proceedings, to recoup his reasonable litigation expenses in connection with this litigation. See R.I. Gen. Laws § 42-92-2(5).
As the parties have asked this Court to resolve this legal issue before determining the amount of reasonable litigation expenses to which Plaintiff may be entitled, and before reducing any such award to judgment, this Court will defer making any award *Page 16 
pending further proceedings in this action.[10] Should the parties not be able to resolve between themselves the issue of the amount of reasonable litigation expenses to be awarded to Plaintiff (inclusive of attorney's fees, witness fees and any other fees and expenses), this Court will proceed, upon request by Plaintiff and with proper notice to the Board, to further hearing on Plaintiff's motion for attorney's fees and costs.
 CONCLUSION
This Court finds that to be considered a "party" eligible to collect reasonable litigation expenses under the Rhode Island Equal Access to Justice Act, R.I. Gen. Laws § 42-92-1 et seq.
(1985, as amended 1994), an individual must demonstrate that his or her "net worth [was] less than five hundred thousand dollars ($500,000) at the time the adversary adjudication was initiated."See R.I. Gen. Laws § 42-92-2(5). Net worth is to be calculated by subtracting total liabilities from total assets, with the acquisition cost of an asset, not its fair market value, to be used to assess the value of the asset. Applying *Page 17 
this acquisition cost method of valuation, this Court concludes that Plaintiff's net worth fell below the Act's statutory threshold of $500,000 at the time Plaintiff commenced litigation against the Zoning Board. Plaintiff is thus legally entitled, subject to further proceedings, to an award of reasonable litigation expenses as defined under the Act. This Court will reserve any determination as to the amount of attorney's fees and expenses to which Plaintiff is entitled pending further hearing in this matter.
Counsel shall confer and submit forthwith for entry an agreed upon form of order that is consistent with this Decision.
[1] While commonly referred to as the Equal Access to Justice Act, the full title of the statute is "Equal Access to Justice for Small Businesses and Individuals." R.I. Gen. Laws § 42-92-1 etseq. (1985, as amended 1994). This Court will refer to the operative statute as the "Equal Access to Justice Act" or the "Act."
[2] This Court has culled the facts and procedural history pertinent to this Decision largely from the earlier reported decision of a Rhode Island Superior Court hearing justice in this case who decided Plaintiff's two consolidated zoning appeals.MacDougall v. Town of Charlestown Zoning Bd. of Review, C.A. Nos. WC 07-0474, WC 04-0564, 2008 R.I. Super. LEXIS 34 (R.I. Super. Ct. Feb. 21, 2008) (Thompson, J.).
[3] The Town Solicitor indicated that he had not filed a petition for a writ of certiorari as of the hearing date because he only had received the requisite authorization from the Town Council to appeal the trial justice's decision on the prior evening. (Town of Charlestown Zoning Bd. of Review Hr'g Tr., May 8, 2008, at 4). Query, therefore, whether he had the authority from the Town Council to file the notice of appeal at the time of its filing.
[4] Plaintiff completed construction of the deck in 2009.
[5] Although the Zoning Board initially objected to Plaintiff's motion for attorney's fees and costs on other grounds, the Board subsequently waived these arguments, conceding that the only issue in dispute is whether Plaintiff meets the net worth requirement of the statute so as to qualify as a "party" entitled to recoup reasonable litigation expenses under the Act.
[6] Plaintiff submitted an affidavit to this Court, attesting that he provided Rick Alger, a certified public accountant, with true and accurate copies of all documents evidencing his assets and liabilities as of July 2004. (MacDougall Aff. ¶¶ 1-2, 5, July 29, 2010). Plaintiff's affidavit specifies that upon review of these documents, Mr. Alger determined that Plaintiff's net worth fell below $500,000 in July 2004.Id. at ¶ 9. Although Plaintiff's affidavit did not contain Mr. Alger's specific calculations, the Board furnished this Court with the Statement of Net Worth that Mr. Alger prepared. (Edgar R. Alger, Donald B. MacDougall Statement of Net Worth July 2004, July 22, 2010). Upon review, this Court observes that Mr. Alger calculated Plaintiff's assets by totaling the value of his (1) cash; (2) retirement accounts; and (3) acquisitioncost of the two parcels of real estate.Id. (emphasis added). Mr. Alger then offset the value of these assets by subtracting Plaintiff's total liabilities, which included (1) two real estate mortgages; and (2) estimated deferred taxes on retirement accounts. Id. Based on these figures, Mr. Alger calculated that Plaintiff's net worth as of July 2004 was well below $500,000. Id.
In response, the Board submitted an affidavit from James J. Lombardi III, a certified public accountant. (Lombardi Aff. ¶¶ 1-4, Sept. 13, 2010). In calculating Plaintiff's net worth as of July 2004, Mr. Lombardi adopted all of the asset and liability figures identified by Mr. Alger, except for his proffered real estate valuations. Id. at ¶¶ 5-7, 9. With respect to Plaintiff's real estate, Mr. Lombardi utilized the fair marketvalue of the properties as of 2004.Id. at ¶¶ 5, 7 (emphasis added). Thus, adopting all Mr. Alger's calculations, save for his real estate valuations, Mr. Lombardi concluded that Plaintiff's net worth in July 2004 was greatly in excess of the statutory threshold of $500,000.Id. at ¶ 9.
[7] Indeed, in calculating Plaintiff's net worth as of July 2004, the only disagreement between the parties is the appropriate methodology by which to value these properties.
[8] "The term `generally accepted accounting principles' is a technical accounting term that encompasses the conventions, rules, and procedures necessary to define accepted accounting practices at a particular time. It includes not only broad guidelines of general application, but also detailed practices and procedures. Those conventions, rules, and procedures provide a standard by which to measure financial presentations"Broaddus v. U.S. Army Corps of Engineers,380 F.3d 162, 166 n. 3 (4th Cir. 2004) (quoting American Institute of Certified Public Accountants, Statement of Auditing Standards No. 69, ¶ 69.02 (1992)).
[9] The case of U.S. v. 88.88 Acres of Land is particularly instructive in this regard. 907 F.2d 106 (9th Cir. 1990). In that case, the United States Court of Appeals for the Ninth Circuit was called upon to review a fee award under the Federal Equal Access to Justice Act in which the central issue was the proper valuation of a parcel of real property. Id. at 107-08. Although the fair market value of the property at issue was determined to be $1,404,190.00, the Ninth Circuit held that the owner's acquisition cost of $43,001.00 was the proper value to assign to the property in calculating its owner's net worth. Id.
[10] At any such hearing, Plaintiff would be required to submit evidence, beyond the affidavit already submitted, to support his fee request, including contemporaneous time records and records of billing and payment. The parties also would be required to address whether Plaintiff is entitled to recoup all fees and expenses associated with the litigation.
In particular, it is not clear whether Plaintiff seeks or is entitled to fees and expenses connected with the initial 2004 Zoning Board hearing. As the hearing justice determined, in her consolidated decision in this case, that Plaintiff's appeal from this Zoning Board decision was untimely, it may be arguable that Plaintiff does not meet the Act's "prevailing party" requirement in R.I Gen. Laws § 42-92-3 as to that appeal. Moreover, it is not clear whether Plaintiff is entitled to fees and expenses stemming from the Board's appeal to the Supreme Court, given that the Supreme Court expressly denied Plaintiff's request for attorney's fees in its order dismissing the Board's appeal. Finally, as the Act specifies that "[t]he award of attorney's fees may not exceed one hundred and twenty-five dollars ($125) per hour, unless the court determines that special factors justify a higher fee," the parties would be required to address whether Plaintiff is requesting fees at a higher hourly rate (which appears to be the case based on Plaintiff's affidavit submitted in connection with his motion for attorney's fees and costs that requests fees billed at an average rate of $177.96 per hour), and, if so, whether special circumstances justify that higher rate. *Page 1